**INDIANAPOLIS GLOVE COMPANY, Inc., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**AMALGAMATED CLOTHING WORKERS OF AMERICA, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 18185, 18328.

United States Court of Appeals
Sixth Circuit.

Sept. 13, 1968.

James S. Haramy, Indianapolis, Ind., for petitioner, Indianapolis Glove Co., Inc., William E. Plane, Indianapolis, Ind., on brief, Cadick, Burns, Duck & Neighbours, Indianapolis, Ind., of counsel.

Jacob Sheinkman, New York City, for petitioner, Amalgamated Clothing Workers of America, AFL–CIO, Robert T. Snyder, New York City, on brief.

Nan C. Bases, N. L. R. B., Washington, D. C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lawrence M. Joseph, Atty., N. L. R. B., Washington, D. C., on brief.

Before PECK and COMBS, Circuit Judges, and WEINMAN, District Judge.*

* The Honorable Carl A. Weinman, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation.

WEINMAN, District Judge.

This is a consolidated case in which the Indianapolis Glove Company, Inc. [hereinafter referred to as the Company] petitions this Court to review and set aside an order of the National Labor Relations Board issued against it on September 20, 1967, and in which the Amalgamated Clothing Workers of America, AFL–CIO [hereinafter referred to as the Union] petitions this Court to review and modify the same order. In its answer to the petitions, the Labor Board requests that both petitions be denied and that its order be enforced in full.

On May 31, 1966 the Union filed a petition for a representative election with the Board seeking designation as bargaining representative for certain employees at the Company's Coschocton, Ohio plant. On July 22, 1966, the parties entered into a "Stipulation for Certification Upon Consent Election" defining the appropriate unit as:

"All production and maintenance employees, excluding all office clerical employees, professional employees, guards and supervisors as defined in the Act."

This stipulation was approved by the Regional Director on July 25, 1966.

On August 4, 1966 an election was held. Of the 154 ballots cast, 73 were for the Union, 68 were against, one ballot was void and 12 were challenged by the Union. The Union challenged the ballots of Turner and Appis on the ground that they had not worked for the Company for at least five years prior to casting their ballots and were unlikely to resume employment because of their advanced age and poor health. The Union further challenged the ballots of part-time employees Riffil, Worthington, Askrens, Chaney, Miller, Hothem, Berlean, Courtright, and Royers, on the ground that their status as part-time employees who tailored their work schedules to fit the maximum yearly earnings allowed to Social Security recipients deprived them of the requisite community of interest with the rest of the unit employees.

Finally, the Union challenged the ballot of employee, Bechtol, on the ground that she was an office clerical employee and therefore excluded from the stipulated unit.

The Regional Director investigated the challenges and on September 7, 1966, issued his report. With respect to the challenges to the ballots of Turner and Appis the Regional Director stated:

"It is apparent that both of the employees have no reasonable expectancy of returning to work in the near future, nor can they be considered as having any present interest in the terms and conditions of employment at the Employer's plant. I therefore recommend that the challenges to their ballots be sustained. The Horn & Hardart Company, 147 NLRB 654, 659."

With respect to the challenges to the ballots of Riffil, Worthington, Askrens, Chaney, Miller and Hothem the Regional Director stated:

"All six worked as full-time employees in the Sewing Department prior to becoming eligible for Social Security benefits. Once they acquired eligibility for these benefits and decided to receive them, they presented the Employer with a schedule of hours they wished to work in order not to earn in excess of the maximum earnings allowed those who wish to receive full benefits. The schedules were approved by the Employer unless it conflicted with its production schedule.

"Beginning with the receipt of Social Security benefits, all of the employees reduced their hours and earnings so they annually receive no more than the maximum earnings allowed Social Security beneficiaries. Other than receiving these benefits and being employed on a part-time basis, their terms and conditions of employment are the same as those of regular employees. They receive vacation and holiday pay commensurate with their earnings and attendance. Their insurance benefits are the same as other

employees in the unit with the exception that at age 65 their medical insurance is transferred to Medicare.

"In view of their special employment status as pensioners, I find that these employees do not have a sufficient interest in common with the employees in the production and maintenance unit to warrant their inclusion in the unit. I recommend therefore that the challenges to their ballots be sustained. The Horn & Hardart Company, supra."

Having sustained the Union's challenges to the two former employees and to six of the nine Social Security recipients, the Regional Director deemed it unnecessary to rule on the challenges to the ballots of the three remaining Social Security recipients, Berlean, Courtright and Royer, whose situation differed in that they had originally reduced their hours because of health considerations, since the ballots of these employees could not alter the outcome of the election. The Regional Director overruled the Union's challenge to the ballot of Bechtol but since her ballot could not affect the outcome of the election, he did not order that it be opened.

On September 16, 1966, the Company filed exceptions to the Regional Director's dispositions of the ballots of employees Riffil, Worthington, Chaney, Hothem, Askrens, Miller, Berlean, Courtright, Royers and Bechtol. It did not except to the Regional Director's ruling that former employees Turner and Appis were ineligible. The Board overruled these exceptions on December 19, 1966, and at the same time issued a Decision and Certification of Representation certifying the Amalgamated Clothing Workers Union as the exclusive representative for the purposes of collective bargaining of all employees in the above described unit. The Company's motion for reconsideration filed January 4, 1967 was denied on January 16, 1967.

The Company thereafter refused to bargain with the Union. On December 8, 1966 the Company announced an increase in wages and incentive bonus benefits without notifying or consulting the Union. This increment was implemented on January 3, 1967.

The Company thereafter refused to bargain with the Union in order to test the rulings on challenged ballots. On February 10, 1967 a complaint was issued alleging that the Company had violated § 8(a) (1) and (5) of the Act by refusing to recognize and/or bargain with the Union upon request and by unilaterally granting a wage increase to employees. In its answer to the complaint the Company denied that it had violated any provisions of the Act, asserting that the certification of the Union was invalid because of the Board's disposition of challenges to election ballots.

The case was heard on April 17, 1967. The parties stipulated the facts concerning the unilateral wage increase. The Company proffered testimony concerning the status of several employees whose ballots had been successfully challenged by the Union. Except for the proffer that employee Miller received gross wages of $1,821.72 from the Company for work performed in 1966, this proffered testimony did not contain newly discovered or previously unavailable evidence. The Trial Examiner considered the proffered testimony immaterial and rejected it and granted General Counsel's motion for summary judgment. The Board affirmed the Trial Examiner's decision with the exception that it refused to adopt the Trial Examiner's remedy which would have required the Company to pay the Union a sum equivalent to the amount of the unilateral increase bestowed on employees from the institution of the increase to the commencement of bargaining.

The Board held that the Company committed unfair labor practices in violation of § 8(a) (1) and (5) of the Act by refusing to bargain with the Union which had been certified by the Board as the exclusive bargaining representative of the Company's employees and by unilaterally granting a wage increase to its employees. The Company admits its refusal to bargain but asserts by way of defense to its actions that the certification

of the Union is invalid because of the Board's disposition of challenges to election ballots.

The Board excluded the six regular part-time employees from the bargaining unit, holding that in view of their special employment status as Social Security recipients these six employees did not have sufficient interest in common with the regular employees to warrant their inclusion in the bargaining unit.

■ The Board has wide discretion in determining the limits of an appropriate bargaining unit. When an issue is raised as to the Board's determination of an appropriate bargaining unit, the standard of review is whether the Board abused its discretion or acted capriciously in fixing such a unit. NLRB v. Tennessee Packers, Inc., Frosty Morn Division, 379 F.2d 172, 182 (C.A. 6, 1967), cert. denied 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 363 (1967); Cherrin Corporation v. NLRB, 349 F.2d 1001, 1007 (C.A. 6 1965), cert. denied 382 U.S. 981, 86 S.Ct. 557, 15 L.Ed.2d 471 (1966); NLRB v. Royal Oak Tool & Machine Co. et al., 320 F.2d 77, 82 (C.A. 6 1963).

The main question presented by this case is whether the Board acted arbitrarily and abused its discretion in sustaining the challenges to the ballots of regular part-time employees, Riffil, Worthington, Askrens, Chaney, Miller and Hothem, for the reason that these employees were Social Security recipients who had reduced their hours and earnings so that they would receive no more than the maximum annual earnings allowed recipients of social security.

■ Eligibility to vote in an election to determine a bargaining representative depends on whether an employee is sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a bargaining representative. Shoreline Enterprises of America, Inc. v. NLRB, 262 F.2d 933, 944 (C.A. 5 1959). *The Board has established a policy of including regular part-time production employees in a bargaining unit with full-time production employees.* H. W. Elson Bottling Co., 155 NLRB 714, 724 (1965); C. & H. Foods, Inc., 100 NLRB 1483, 1485 (1952); Dependable Parts, Inc., 112 NLRB 581, 584 (1955); Economy Food Center, Inc., 142 NLRB 901, 910 (1963), enf'd, NLRB v. Economy Food Center, Inc., 333 F.2d 468, 471 (C.A. 7 1964); Lancaster Welded Products Inc., 130 NLRB 1478, 1479 (1961). *The tests used by the Board are whether the part-time employees work at regularly assigned hours a substantial number of hours each week, perform duties similar to those of full-time employees, and share the same supervision, working conditions, wages and fringe benefits.* H. W. Elson Bottling Co., supra; C. & H. Foods, Inc., supra; Lancaster Welded Products, Inc., supra. *Where these factors exist, the Board has held that part-time employees have a community of interest with the full-time employees and sufficient interest to entitle them to be included in the unit.* H. W. Elson Bottling Co., supra, at 724.

It is undisputed that the six employees involved are employed on a regularly scheduled part-time basis and work a substantial number of hours each week. The six employees are long time employees of the Company whose seniority dates range from 45 years to 13 years. Other than being employed on a part-time basis, their terms and conditions of employment are identical to those of the full-time employees. The six regular part-time employees perform the same work, are under the same supervision, are compensated at the same rate of pay, have the same working conditions, and receive the same benefits as do the full-time employees.

■ The six employees involved in this case meet the traditional tests applied by the Board in determining whether regular part-time employees have a sufficient community of interest with full-time employees to entitle them to be included in the bargaining unit. The sole factors distinguishing these employees from other regular part-time employees whom the Board has traditionally

included in a bargaining unit are that the six regular part-time employees involved in this case are over 65 years of age and were motivated to work part-time by a desire not to receive annual earnings exceeding the maximum allowed Social Security recipients. In sustaining the challenges to the ballots of these employees the Board has relied upon new factors, the employees' age and motive for working part-time. The age and motive of an employee for working part-time is irrelevant to a determination of whether part-time employees share a community of interest with full-time employees. One employee may work part-time because of health reasons, another in order to supplement the family income. Regardless of their motives, regular part-time employees are subject to the same terms and conditions of employment as full-time employees with the exception that they work less hours. Under the Board's approach, employees between the ages of 65 and 71 who work on a regular part-time basis because of their desire not to receive annual earnings exceeding the maximum allowed recipients of Social Security, would be excluded from the bargaining unit. However, upon reaching age 72, when the maximum earnings limitation is no longer imposed by the Social Security Act, these employees would become eligible for inclusion in the bargaining unit even though they do not change their work schedules upon reaching age 72. The eligibility of an employee would depend on his age at the time the election is held. There is no rational relationship between the employees' age and motive for working part-time and an employee's community of interest with other employees. The Court concludes that the Board's action in excluding the six part-time employees on the basis of their age and motive for working part-time is erroneous as a matter of law.

■ Counsel for the Board contends that the exclusion of these Social Security recipients was reasonable and well within the Board's discretion in determining the appropriate unit because these employees have different collective bargaining goals than other employees. Specifically, counsel asserts that Social Security beneficiaries will be less interested in obtaining wage increases than regular employees with a growing family to support. Under this reasoning the fact that the disfranchised employees met the objective tests for determining community of interest—similarity of work, wages, fringe benefits, supervision, and whether the employee works substantial hours per week on a regular basis—became irrelevant and the employees' right to be included in the bargaining unit depends on the Board's speculation as to the collective bargaining goals of employees. The Board's action in excluding these employees from the bargaining unit on the sole basis of the Board's speculation as to their bargaining goals instead of on the basis of objective factors showing a lack of community of interest is totally unreasonable and arbitrary. While the Board has wide discretion in determining the appropriate unit, the exercise of that discretion is limited by the requirement that the Board " * * * assure to employees the fullest freedom in exercising the rights guaranteed by this sub chapter * * *." § 159(b) Title 29 U.S.C. In disfranchising these regular part-time employees solely on the basis of their status as recipients of Social Security the Board has violated this statutory directive.

■ The practical effect of the Board's action in sustaining the challenges to the ballots of these Social Security recipients who work on a regular part-time basis is to deny these employees the rights guaranteed them by the National Labor Relations Act solely because they seek to enjoy the fullest rights granted them by the Social Security Act. While a part-time employee who receives Social Security benefits may not have sufficient interest in common with other employees to justify his inclusion in the bargaining unit be-

cause he is employed on an irregular basis or fails to meet other objective standards established by the Board for determining community interest, the Court does not believe that regular part-time employees who work a substantial number of hours per week on a regular weekly schedule and who are subject to the same terms and conditions of employment as full-time employees, can be excluded from the bargaining unit solely on the ground that they seek to enjoy rights conferred upon them by the Social Security Act. There is nothing in the National Labor Relations Act which shows a congressional intent to deny employees their Section 7 rights to select a bargaining representative and participate in collective bargaining with their employer because they elect to receive full Social Security benefits.

The Board declined to consider the issues raised by the challenges to the ballots of employees Berlean, Courtright, and Royer because their ballots could not affect the results of the election. The Board erred in sustaining the challenges to the ballots of Riffil, Worthington, Askren, Chaney, Miller and Hothem. The votes cast by these six employees could affect the results of the election. Accordingly, the three ballots of Berlean, Courtright and Royer could also affect the election results and the question of their eligibility to vote must be resolved.

It is undisputed that the three employees are Social Security recipients who work part-time averaging approximately twenty hours per week. They are distinguishable from the other six Social Security recipients in that they began working part-time for health reasons from ten to fifteen years prior to the time they began receiving Social Security benefits. Once they were eligible for Social Security benefits their work schedules needed little revision because their past earnings closely approximated the maximum earnings allowed under the Social Security Act. These employees met all the traditional tests applied by the Board for determining community of interest. The fact that they now receive Social Security does not justify their exclusion from the bargaining unit. The consideration of the eligibility of these employees to be included in the bargaining unit further demonstrates the arbitrary nature of the Board's decision to exclude Social Security recipients solely on the basis of their status as pensioners. Under the Board's approach the three employees will be eligible to be included in a bargaining unit so long as they work part-time for health reasons but upon becoming eligible to receive Social Security they would be disqualified from further participation in the bargaining unit, in spite of the fact that their hours, wages, work schedule and other terms and conditions of employment would not materially change.

The Petition to Review and Set Aside the Order of the Board is granted. Since the Court has set aside the order of the Board, the issue raised by the petitioning Union as to the propriety of the remedy adopted by the Board has become moot. The Union's Petition to Review is hereby dismissed.