**CHERRIN CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 16045.**

United States Court of Appeals
Sixth Circuit.

Aug. 13, 1965.

Marvin W. Cherrin, Dearborn, Mich., for petitioner.

George B. Driesen, Atty., N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, Atty., N. L. R. B., Washington, D. C., on the brief), for respondent.

Before MILLER and CECIL, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Miss Marilyn Cherrin is an employee of the Cherrin Corporation. She is the daughter of Phillip Cherrin, Secretary of

the Cherrin Corporation and an owner of twenty per cent of its stock. Miss Cherrin is also a niece of all of the other officers and owners of the Cherrin Corporation.

Pursuant to a decision of the Acting Regional Director of the National Labor Relations Board, an election was held among all the clerical employees of the Corporation. At the conclusion of the election, there was served upon the Office Employees' International Union, Local 10, AFL–CIO, and upon the Corporation, a tally of ballots showing that of 14 ballots cast, 7 were for the Union, 6 were against the Union, and 1 ballot was challenged by the Union on the ground that the voter, Marilyn Cherrin, was the daughter of the owner of the Corporation. As this ballot was determinative of the results of the election, it was received and segregated to maintain its secrecy. Thereafter, the Union filed with the Acting Regional Director timely objections to the conduct of the election. As to the ballot of Marilyn Cherrin, the Acting Regional Director sustained the challenge. This resulted in the Union's having a majority of the votes; and it was certified as the bargaining representative of the employees of the clerical unit.

Thereafter, the Cherrin Corporation refused to bargain with the Union; a complaint was issued; all parties stipulated that the case should be transferred to the Board, without a hearing before a Trial Examiner; and a stipulation was entered to provide that the sole question to be decided was whether the Acting Regional Director erred in sustaining the challenge of the ballot of Marilyn Cherrin. The Board found that the Acting Regional Director properly sustained the challenge of the ballot of Miss Cherrin; that petitioner Corporation had unlawfully refused to bargain with the Union; and directed petitioner to cease and desist from refusing to bargain and to post appropriate notices. From the Board's order, petitioner seeks review.

The only issue presented by the parties is whether the Board's action in excluding Miss Cherrin from the bargaining unit of the clerical employees and sustaining the challenge of her ballot, was reasonable, proper, and authorized by the National Labor Relations Act.

It is contended by the Board that where an employee is the daughter of the Secretary, a twenty-per-cent shareholder in a small family-owned corporation, where her father actively participates in the business, where the other owners are also related to her, and where she is accorded special status, different from that accorded other employees in the bargaining unit, the Board is not prohibited from taking her family relationship into account in deciding whether the purposes of the Act will best be served by including her in a unit with other employees.

The Board's determination that Marilyn Cherrin enjoyed special status on account of her relationship to the management is based upon four findings that, unlike other employees: 1) she did not punch a time clock; 2) she was paid a weekly salary; 3) no record was kept of her absences on account of illness; and 4) she was not reprimanded or penalized for tardiness.

Petitioning Corporation contends that there is no authority under the Act, either by virtue of Section 2(3) or Section 9(b) thereof, authorizing the Director to exclude Miss Cherrin, admittedly an employee of the petitioner, from the bargaining unit, and thereby depriving her of her vote. In support of its contention, the petitioner relies upon the decision of this court in N. L. R. B. v. Sexton, 203 F.2d 940. In that case, the court held that where the Board excluded the employer's nephew, because of family relationship, from the appropriate bargaining unit and from participating in an election to select the bargaining agent, the order of the Board directing the employer to bargain collectively with the certified bargaining agent, would not be enforced in view of the fact that the Board did not have authority to exclude, for such reasons, any person other than a spouse or a child of the employer, under the National Labor Relations Act, Sec-

tion 2(3), 8(a), (1, 5), 9, as amended, 29 U.S.C.A. §§ 152(3), 158(a) (1, 5), 159.

To the foregoing contention, the Board replies that the Sexton case is not here applicable since the Board in the instant case did not exclude Miss Cherrin from the election because of her relationship to the owners of the Corporation, but because of the special status accorded to her on account of such relationship. In this regard, the Board claims that the decision of this court in N. L. R. B. v. Volney Felt Mills, 210 F.2d 559, sustains its contention that the Board is not forbidden to consider family ties in making unit determinations. In the Volney case, the Board had sustained challenges to ballots cast by a son, a son-in-law, and a brother, of three supervisory workers, on the ground that these three employees had a diversity of interest from other production and maintenance employees, because of such privileges and special consideration in work assignments enjoyed by them, growing out of and due to their being relatives of the supervisory employees. In decreeing enforcement of the Board's order based on the election in the Volney case, this court said:

> "The rulings of the Regional Director were not arbitrary or capricious since they were based upon reasonable grounds, including family relationship of challenged voters to supervisory employees, one of such supervisory employees being the general superintendent of the respondent, and it is to be noted that unless there was infirmity in each of the challenges the union would still have prevailed and a mistake of honest judgment does not constitute an arbitrary or capricious decision."

■■ It is our conclusion that, while the Board would not have the right to exclude an employee from the unit, or from voting, solely because of relationship to the owner, it would not be an arbitrary and capricious decision of the Board to exclude an employee from the unit and voting, upon various reasonable grounds, including family relationship to the owners.

However, the findings of the Board that Miss Cherrin was accorded special status on account of her relationship to the owners of the Corporation rest on rather flimsy evidence; and we are left with the impression that the case against petitioner is pretty thin.

■ Miss Cherrin is not a child of the owner, since the owner is a corporation; and her vote could not thereby be excluded as a child of the owner under Title 29 U.S.C.A. § 152(3). Of course, her father is Secretary of the Corporation and a twenty-per-cent owner of the stock. But Miss Cherrin is not an individual in the employment of her father, but an individual in the employment of a corporation in which her father is a minority stockholder and an officer.

■■ Formerly, in these cases, mere existence of a close family relationship of an employee to the management was considered and held by the Board to be ground for exclusion of such employee from a bargaining unit. Under such a rule, Miss Cherrin would be excluded on the ground of family relationship, not only because her father was a stockholder and officer of the Corporation, but because of her relationship to all of the other officers and stockholders. It was however, the decision of this court in N. L. R. B. v. Sexton, 203 F.2d 940, that resulted in the abandonment of such a rule, and the new rule adopted by the Board is that in order to exclude an employee from a bargaining unit, such family relationship can be considered *only if the employee enjoys a special status which allies his interests with those of management.* See International Metal Products Company, 107 N.L.R.B. 65. It is, therefore, now recognized that family relationship of an employee to persons constituting the corporation is not sufficient for exclusion of such employee from the bargaining unit. There has to be more. It must be established that such relationship of an employee to management can be considered only if

the employee enjoys a special status as a result thereof.

It might be supposed that Miss Cherrin would vote in the election as the officers of the Corporation wanted the employees to vote, that is, against the Union. But, in N. L. R. B. v. Sexton, supra, it also might have been supposed that the nephew employed by the owner would vote in the election as his uncle wanted the employees to vote. However, as previously stated, mere family relationship to the owner does not exclude an employee from such an election except "an individual employed be his child or spouse." And, in the Volney Felt Mills case, it was, as heretofore mentioned, the family relationship to supervisory employees that justified the exclusion of the challenged voters where, because of such family relationship, the excluded voters had enjoyed special privileges and special consideration or work assignments.

■ In support of the Board's findings, it is contended by appellee that Miss Cherrin actually enjoyed a special status which allied her interests with those of management. In proof of this contention, it is claimed by the Board that Miss Cherrin was not obliged to punch a time clock, as was required by other employees. Miss Cherrin, in her affidavit, which is accepted as evidence, stated: "When I began my employment I was required to punch the time clock—After two months or so I discontinued using the time clock. I do not recall whether I was instructed to discontinue using the time clock or whether I took it upon myself not to use it after that time." It does not appear in the record that the employer ever gave Miss Cherrin permission, or instructed her, not to use the time clock. It is to be said that nowhere in the record does it appear that she kept hours different from the other office clerical employees. The office manager of the petitioning Corporation stated that her regular hours of employment were from 8 A.M. to 4:30 P.M. In Miss Cherrin's affidavit she states: "I began my employment as a full time employee for Cherrin (Corporation) working 40 hours per week Mondays thru Fridays. I worked 8 hours per day. I continue to work 8 hours per day and 40 hours per week on Mondays thru Fridays." The office manager, in his affidavit, further stated: "The [time] clock is not used when the girls take their coffee breaks and their lunch periods." The record reveals that Miss Cherrin was *required* to punch the time clock. The Corporation contends that "At most the record shows that Marilyn Cherrin did not punch the time clock as she was told to do and was not punished by her employer for failure to follow the rule"; and, also, that the evidence shows that the Corporation's rules relative to the punching of the time clock are very liberal and limited in their enforcement against all office clerical employees. With these contentions of the Corporation, we agree. However, the fact that Miss Cherrin did not punch the time clock, as other employees were required to do, and that she was not penalized for her failure to do so, is some evidence of special consideration, and the Board's finding on this aspect of the case cannot be said to be arbitrary and capricious.

■ With regard to the fact finding that, unlike other employees, Miss Cherrin was paid a weekly salary, it appears that the office manager referred to her remuneration as "a salary of $60.00 per week for 40 hours work" but he also referred to the remuneration of other clerical employees working the same number of hours at the same rate of pay, as a "salary." We are of the opinion that there is no basis in the evidence for the Board's finding that Miss Cherrin enjoyed a special status *as a salaried employee*, while other clerical employees doing the same work were not salaried employees.

The third finding of the Board was that Miss Cherrin enjoyed a special status because no record was kept of her illness, but that other employees' sick leave is recorded, "and that the employer's sick leave policy—limiting absences to five per year—is thus not applied to

Marilyn." The record disclosed that Miss Cherrin had missed only two days' work because of illness during the prior year and a half. The foregoing constitutes a rather flimsy basis for the Board's finding that Miss Cherrin enjoyed a special status because no record was kept of her absences on account of illness, since, for a period of more than a year, she did not take half of the sick leave to which she was entitled. However, the fact that, in her case, records were not kept of her absences because of illness, but that other employees' sick leave was recorded, gives some basis for a finding of special consideration, although the actuality was that she did not receive any such special consideration because of the failure of the office manager to record her absences on account of illness.

Finally, the Board's finding that "unlike other employees who are subject to reprimand and/or penalty if they report for work late, Marilyn Cherrin * * * has never been reprimanded or penalized when she has been tardy." In this regard, the affidavit of the office manager stated: "I have never had to reprimand an employee for excessive absenteeism or tardiness * * * [W]ith respect to not allowing employees a grace period if they are late to work, we do not strictly enforce our reporting time. The question of whether an employee will be penalized is entirely up to me. In many instances when an employee is late we waive such a penalty as deducting the amount from their pay. Marilyn Cherrin has not to my knowledge ever been penalized for being late to work. On occasion, the number of times I cannot recall, Marilyn has arrived later than 8:15 or 8:20 a. m. but has not been penalized. On occasion she has worked beyond her required time in order to offset any tardiness. The other office employees are allowed to follow this procedure." In this regard the Board contends: "Since the affidavit [of the office manager] states that in *many* instances, the employer waives deducting the lost time from the employee's pay, the Board reasonably inferred that in *some* instances such a deduction was made. No record is kept of Marilyn's hours, consequently no such deduction could have been made in her case. Thus, the Board's inference that she is treated differently is reasonable."

When the Union challenged Miss Cherrin's ballot, it was challenged on the ground that she was a daughter of the owner. This would have been sufficient to exclude the ballot under the rule followed by the Board before the decision of this court in N. L. R. B. v. Sexton, 203 F.2d 940, but it is not sufficient ground for exclusion since that decision. It was not until the investigation conducted by the Acting Regional Director, after the election for a bargaining agent, that the reasons for sustaining the challenge were based, not upon the fact that Miss Cherrin was a daughter of the owner, but, also, probably as an afterthought, on the ground that, as a result of such relationship, she occupied a special status.

The evidence as it appears to us discloses that Miss Cherrin worked eight hours a day, forty hours a week, at the same remuneration that other similar clerical employees received; that when she was late for work, she put in extra time at the end of the day to make up for the time she had lost; that she was not a "salaried" employee, different from other employees doing the same kind of work, at the same rate of pay; that she actually received no special consideration because of absence for illness; and that she was treated in no different way than other clerical employees with regard to reprimand or penalty for tardiness. Miss Cherrin appears from the record to be an industrious, reliable employee, with no favors asked, and no favors given; and under the ruling case of N. L. R. B. v. Volney Felt Mills, 210 F.2d 559, the reasons given for excluding her from the clerical unit, and depriving her of her vote, appear to hark back to the period before N. L. R. B. v. Sexton, supra, and are thin, indeed.

■ If this case were before us de novo, we would, possibly, consider of small importance the evidence with re-

gard to punching the time clock, the fact that no record was kept of absences on account of illness, and the lack of reprimand for tardiness, as showing that Miss Cherrin enjoyed special status that allied her interests with those of management. But the Board is nearer to these controversies than the courts. It is more experienced in these cases that have many windings. Moreover, review of the Board's findings by the courts is strictly limited by Congress.

In any event, the facts and all inferences to be drawn therefrom are for the fact finder, in this case, the Board, and, with one exception above mentioned, we cannot say that the Board's findings are arbitrary and capricious, which is the standard to be followed in representation proceedings.

In accordance with the foregoing, the Board's petition for enforcement of its order is hereby decreed.