NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CARAVELLE WOOD PRODUCTS, INC.,
Respondent.

No. 71–1608.

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 1972.

Decided Aug. 8, 1972.

**676**

Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., National Labor Relations Board, Washington, D. C., Peter G. Nash, Gen. Counsel, Michael S. Winer, Atty., National Labor Relations Board, for petitioner.

Willis S. Ryza, Matthew R. McArthur, Chicago, Ill., for respondent, Caravelle Wood Products, Inc.; Pope, Ballard, Kennedy, Shepard & Fowle, Chicago, Ill., of counsel.

Before CLARK, Associate Justice,* SPRECHER, Circuit Judge, and CAMPBELL, District Judge.**

SPRECHER, Circuit Judge.

Caravelle Wood Products, Inc. refused to bargain with the Union [1] in order to challenge the Board's certification of the Union as exclusive bargaining representative of the Company's employees. The Board seeks enforcement of its decision and order, reported at 185 NLRB No. 115 (1970). We deny enforcement.

The Company manufactures wood products in South Chicago Heights, Illinois. It is a corporation whose stock is owned in equal portions by ten shareholders: Joseph Paradiso (president); his cousins Louis Paradiso (vice president), John Paradiso (head of receiving and mill room), Donald Paradiso (head of assembly), Nick Paradiso (head of shipping and packaging) and Rose Lecoure; the husband of another cousin, Richard Valentino; George Grutzius (head of mill room); Donald Kloss (head of finish room); and Charles Gaines. Thus 70 percent of the shares are owned by members of the Paradiso family; seven of the ten stockholders are active in the management of the Company.

Among the persons employed by the Company are eight relatives of shareholders: Gina and Paul Paradiso, the wife and son of Louis Paradiso; Deborah Paradiso, the daughter of John Paradiso; Inez Paradiso, the wife of Donald Paradiso; Irene, Raymond and Dennis Paradiso, the wife and sons of Nick Paradiso; and Donald W. Kloss, the son of Donald Kloss.

After directing a secret election among the Company's production and maintenance workers, the regional director excluded as "employees" the eight relatives because their parents or spouses were "substantial" shareholders in a closed corporation. The results of the election were 35 votes for the Union and 32 against. The six challenged ballots cast by excluded relatives might affect the result; enforcement of the order to bargain is therefore improper if those relatives should not have been excluded.

The regional director, whose decision was affirmed by the trial examiner and the Board, excluded the eight relatives under the definition of "employee" in section 2(3) of the National Labor Relations Act (29 U.S.C. § 152(3) (1965)):

> The term "employee" shall include any employee, . . . unless this subchapter explicitly states otherwise, . . . but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse. . . .

He based his exclusion on the Board's decision in Foam Rubber City #2, 167 NLRB 623 (1967).

* Associate Justice Tom C. Clark, United States Supreme Court, retired, is sitting by designation.

** Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. Textile Workers Union of America, AFL–CIO.

Before *Foam Rubber City* the Board had interpreted section 2(3) to exclude the spouse of a *sole* shareholder, though technically the corporation, not the related shareholder, was the employer. P. A. Mueller and Sons, Inc., 105 NLRB 552 (1953); see Bridgeton Transit, 123 NLRB 1196 (1959); Colonial Craft, Inc., 118 NLRB 913 (1957). But the Board considered the child or spouse of even a controlling shareholder to be an employee; he was allowed to vote unless there was proof that because of the family relationship he had a "special status" allying him with the interests of management or divorcing him from a community of interests with other employees. Printing Industry of Delaware, 131 NLRB 1100 (1961).

In *Foam Rubber City* the challenged employee was the son of one 50 percent stockholder and the nephew of the other. The Board reasoned that, if the father and uncle had organized their business as a partnership, the son would not be an employee under section 2(3). NLRB v. Hofmann, 147 F.2d 679 (3d Cir. 1945). Having lifted one layer of the "corporate veil" in the case of a sole shareholder, the Board decided to lift another for "substantial" shareholders in closely held corporations. It held the son was not an "employee" under section 2(3).

In so interpreting section 2(3), the Board specifically disagreed with the Sixth Circuit Court of Appeals decision in Cherrin Corp. v. NLRB, 349 F.2d 1001 (1965), cert. denied, 382 U.S. 981, 86 S.Ct. 557, 15 L.Ed.2d 471 (1966). There the employee's father owned 20 percent of the stock; she was the niece of all the other shareholders and officers of the corporation. The court decided the Board lacked power to exclude her from the unit solely because of the family relationship. *See also* Uyeda v. Brooks, 365 F.2d 326 (6th Cir. 1966).

The Board's decision in *Foam Rubber City* was not reviewed by a court of appeals; in fact, this is the first time a federal court has been faced squarely with a challenge to its validity. But this circuit has previously indicated its view of *Foam Rubber City* in Lake City Foundry Co. v. NLRB, 432 F.2d 1162, 1165–1168 (7th Cir. 1970). There the Board excluded the three sons of the two principal stockholders. In strong dicta this court expressed its opinion that the Board did not have authority to "amend" section 2(3) to subvert the language chosen by Congress. Rejection of *Foam Rubber City,* however, was not the holding of the case. The election had occurred five months before the decision in *Foam Rubber City*; the court merely held that the Board abused its discretion in applying *Foam Rubber City* retroactively.

The Board has not been consistent in its application of *Foam Rubber City*. In Buckeye Village Market, Inc., 175 NLRB 271 (1969), the son of the store manager, who also owned 10 percent of the stock, was included in the unit. The Board gave as its reasons: "[His] father does not own a substantial share of the Employer's stock, and  . . . there is no evidence that he enjoys special status which allies him to management because of his father's position. . . . " 175 NLRB at 274. Yet in the present case the Board has excluded as employees persons in exactly the same position as the son in *Buckeye Village Market*. Obviously the trend is for the Board to interpret "substantial shareholder" ever more generously.

The Board argues it has almost unlimited discretion to expand the exclusionary category of section 2(3). This court, disagreeing in *Lake City Foundry,* was not the first court to limit the Board's discretion in interpreting statutory language. The United States Supreme Court in Office Employees International Union, Local No. 11 v. NLRB, 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957), ruled the Board could not refuse to assert jurisdiction over labor unions as employers under section 2(2) of the act. The Court said, "[S]uch an arbitrary blanket exclusion of union employers as a class is beyond the power of the Board." 353 U.S. at 318, 77 S.Ct. at

802. The Court made a similar ruling on the hotel industry in Hotel Employees Local No. 255, etc. v. Leedom, 358 U.S. 99, 79 S.Ct. 150, 3 L.Ed.2d 143 (1958).

■ The *Foam Rubber City* formulation, which excludes children and spouses of "substantial" shareholders of closely held corporations, has proved so elastic that it virtually repeals the statutory language. We must refuse to enforce the order to bargain because it was based on exclusion of the seven Paradisos and Donald W. Kloss as "employees" under section 2(3).

In its application for enforcement, the Board urges us to allow exclusion of Kloss and the Paradisos from the appropriate bargaining unit under section 9(b) of the act (29 U.S.C. § 159(b) (1965)):

> The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof. . . .

The *problem with its position is that* the Board wants to make exclusion of family members from a unit as automatic under section 9(b) as their exclusion as employees would have been under section 2(3). In *Foam Rubber City* the Board said all individuals it excluded under section 2(3) would also be excluded under section 9(b), because such persons "have interests more closely identified with management than with their fellow employees." 167 NLRB at 624.

■ We see no reason to give the Board total discretion under one section to accomplish what it cannot under another section. As the court said in NLRB v. Sexton, 203 F.2d 940 (6th Cir. 1953):

> [W]e find no justification for the exercise of discretion on the part of the

Board, by virtue of Section 9 of the Act, to exclude from the appropriate bargaining unit and from participation in the election for the selection of a bargaining agent any persons on the basis of family relationship other than those specifically excluded under Section 2(3).

Considering the broad definition of "employee" used by Congress in section 2(3) and the critical interests of all employees in selecting their economic representatives,[2] we believe section 9(b) is neither specific enough nor strong enough to support a grant of total authority to the Board to exclude relatives from a unit.

■ While we will not allow the Board to apply an automatic or per se rule to exclude spouses and children under section 9(b), there are many precedents for the Board's exclusion on a case-by-case basis of relatives who enjoy a "special status," such as privileges or favorable working conditions not granted other employees. *E. g.,* Cherrin Corp. v. NLRB, 349 F.2d 1001 (6th Cir. 1965), cert. denied, 382 U.S. 981, 86 S. Ct. 557, 15 L.Ed.2d 471 (1966). These relatives include persons whom the Board admits are employees under section 2(3). NLRB v. Jackson Farmers, Inc., 432 F.2d 1042 (10th Cir. 1970), cert. denied, 401 U.S. 955, 91 S.Ct. 974, 28 L.Ed.2d 238 (1971) (wife of general manager who owned no stock); NLRB v. Dan Howard Mfg. Co., 390 F.2d 304 (7th Cir. 1968) (mother of one owner); Uyeda v. Brooks, 365 F.2d 326 (6th Cir. 1966) (brother of employer); Pargas of Crescent City, Inc., 194 NLRB No. 101 (1971) (wife of nonstockholding manager); P. A. Mueller and Sons, Inc., 105 NLRB 552 (1953) (nephew of corporation owner).

■ In the present case, however, the regional director made a specific finding that none of the challenged employees enjoys a "special status." He discussed no other factors which might guide the

2. *See, e. g.,* Shoreline Enterprises of America, Inc. v. NLRB, 262 F.2d 933, 944 (5th Cir. 1959).

Board's exercise of discretion under section 9(b); instead he relied entirely on the fact of family relationship. There are a number of factors the Board might consider under section 9(b): how high a percentage of stock the parent or spouse owns, how many of the shareholders are related to one another, whether the shareholder is actively engaged in management or holds a supervisory position, how many relatives are employed as compared with the total number of employees, whether the relative lives in the same household or is partially dependent on the shareholder.

Because the Board is entitled to make a case-by-case analysis under section 9(b), we will remand this case to the Board for a factual determination of whether the related employees' ballots should be counted. If the Board decides to exclude the family members under section 9(b), or if their ballots do not affect the outcome of the election, the Union's certification will be valid and the Company will have to bargain with the Union.

 The Company raises two further obstacles to the validity of the certification. The first is the Board's failure to hold an evidentiary hearing on one of the Company's objections to the election. The objection involved the entrance of a Union organizer into the polling area during the election. He spoke only with a Board agent and not with any employees. The Company relies on Milchem, Inc., 170 NLRB 362 (1968), but both the holding and reasoning in that case were concerned only with conversations between an employee and a representative of either party. Since it is undisputed that no such conversation occurred here, the Board properly acted without an evidentiary hearing.

The second obstacle is the Company's assertion that a new election should be held because of the rapid rate of employee turnover and the length of time since the original election, which was held in June, 1969. The Company cites Clark's Gamble Corp. v. NLRB, 422 F.2d 845 (6th Cir.), cert. denied, 400 U.

S. 868, 91 S.Ct. 100, 27 L.Ed.2d 108 (1970). In that case a delay of more than five years after a majority determination based on authorization cards was occasioned primarily by the Board's inaction. Since none of the elements compelling denial of enforcement in that case appears in the present case, we decline to remand for consideration of events since the Board's order. *Cf.* NLRB v. Kostel Corp., 440 F.2d 347, 353 (7th Cir. 1971).

Enforcement is denied and the case is remanded to the Board for further proceedings consistent with this opinion.