**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CARAVELLE WOOD PRODUCTS, INC., Respondent.**

**No. 73–1260.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1974.

Decided Oct. 15, 1974.

Rehearing En Banc Denied Dec. 23, 1974. See 510 F.2d 257.

Stevens, Circuit Judge, concurred and filed opinion.

**1182**

Elliott Moore, Acting Asst. Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Willis S. Ryza, Chicago, Ill., for respondent.

Before CASTLE and KILEY, Senior Circuit Judges, and STEVENS, Circuit Judge.

KILEY,* Senior Circuit Judge.

This is the second petition filed by the Labor Board in this proceeding to enforce its order, based upon a summary judgment of the Administrative Law Judge, that Caravelle violated §§ 8(a)(1) and (5) of the National Labor Relations Act (Act)[1] by refusing to bargain with the Union.[2] The Board originally ordered Caravelle to bargain;

the first petition followed; and this court denied enforcement and remanded for further proceedings. 466 F.2d 675 (1972) (Caravelle I). We now order enforcement of the Board's present order.

The Union was certified after a representation election, prior to which eight relatives of Caravelle stockholders were excluded from the bargaining unit—the production and maintenance employees. The election resulted in 35 votes cast for, and 32 votes against, the Union. Thirteen votes, including those cast by six of the excluded relatives,[3] were challenged, and the Regional Director sustained challenges to the six relatives' votes.[4] The Union was then certified as the unit's bargaining agent and subsequently requested recognition and bargaining.

Caravelle refused to bargain, and the Union filed unfair labor practice charges. The General Counsel's complaint followed. In its answer to the complaint, Caravelle denied that the Union's certification was valid and asserted that the Regional Director erred in not counting the six ballots. After a hearing, the Administrative Law Judge decided in favor of the General Counsel and against Caravelle's assertion with respect to the votes. He found Caravelle guilty of violating §§ 8(a)(1) and (5) of the Act. The Board adopted the Judge's decision and ordered Caravelle to bargain. The enforcement petition in *Caravelle I* followed.

This court in *Caravelle I* denied enforcement because, in sustaining the Regional Director's refusal to count the six votes, the Board relied "entirely" upon the fact of the family relationship between the six employees and principal owners of the stock who were also directors and officers of the corporation.

---

* This opinion was written and approved by the panel and sent to Scheffer Press, Inc. for printing prior to the date of Judge Kiley's death on September 6, 1974.

1. 29 U.S.C. § 151, et seq.

2. Textile Workers Union of America, AFL–CIO.

3. The record does not disclose how or why the six, previously excluded from the unit, were able to vote.

4. The resolution of the remaining seven challenges is not before us.

The court remanded the proceeding with guidelines for the Board's consideration in a redetermination of the eligibility of the six voters.

On remand the Board found that Caravelle

is a closely held corporation dominated by the Paradiso family whose members together own 70% of the stock, serve as directors, occupy most of the key offices of the Company, are active in its operation, and hold most of the supervisory positions.

It found further that employees Inez and Irene Paradiso, wives of stockholders and department heads Donald and Nick Paradiso, respectively, "presumably" lived with their husbands. The Board "presumed" also that employees Raymond and Dennis Paradiso, sons of Nick Paradiso, lived at home and, because they were students, were to some extent economically dependent upon him. No similar finding was made with respect to employees Paul Paradiso, son of vice-president Louis Paradiso, or Donald W. Kloss, son of Donald Kloss, a Caravelle departmental supervisor.

Caravelle had unsuccessfully contended on remand that the Board should apply the "special status" test in its redetermination.[5] The Board concluded instead that the six relatives lacked sufficient "community of interest" with the other employees in the bargaining unit, and that the refusal to count their votes was proper. It confirmed its original bargaining order, and the petition to enforce now before us followed.

## I.

The principal issue presented is: Did the Board abuse its discretion under §

9(b)[6] of the Act by excluding from the bargaining unit—and sustaining challenges to the votes of—the six Caravelle relatives employed by the closely held family corporation through the use of the "community of interest," instead of the "special status," standard.

## A.

██ The Board is invested with a broad discretion in determining bargaining units "to assure to employees the fullest freedom" in exercising their rights under the Act. Once made, its decision is entitled to great weight on review. Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491 67 S.Ct. 789, 91 L.Ed. 1040 (1947).

The Sixth Circuit described the Board's process in determining unit composition:

The touchstone of an appropriate bargaining unit is the finding that all of its members have common interest in the terms and conditions of employment, to warrant their inclusion in a single unit to choose a bargaining agent. Uyeda v. Brooks, 365 F.2d 326, 329 (6th Cir. 1966).

And the court in Shoreline Enterprises of America, Inc. v. NLRB, 262 F.2d 933, 944 (5th Cir. 1959), stated:

Eligibility . . . depends on whether an employee is sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a collective bargaining agent.

As the Board aptly puts it, a "community of interest" must exist among the workers included in a unit.

Accordingly, part-time[7] and summer[8] employees, lithographers[9] and members

5. The Regional Director had previously found that none of the relatives enjoyed "special status."

6. "The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising their rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . . ."

7. NLRB v. Quality Markets, 387 F.2d 20 (3rd Cir. 1967).

8. NLRB v. Belcher, 284 F.2d 118 (5th Cir. 1960).

9. NLRB v. Krieger-Ragsdale & Co., 379 F.2d 517 (7th Cir. 1967).

of a composing room in a print shop,[10] confidential [11] and upper-level management personnel [12] have all been excluded from various bargaining units for lack of community of interest. In United Aircraft v. NLRB, 333 F.2d 819 (1964), cert. den., 380 U.S. 910, 85 S.Ct. 893, 13 L.Ed.2d 796 (1965), the Second Circuit held that trainees had a sufficient community of interest for inclusion in the bargaining unit. The basis for each of these decisions was the determination that the unit employees were related by the common characteristics of the jobs they held.

However, in the early Board decisional history, job-related common characteristics have not necessarily qualified certain employees for inclusion in a unit. The community of interest standard has been relied upon by the Board to exclude individuals from bargaining units for familial reasons. In Louis Weinberg Assoc., Inc., 13 NLRB 66, 69 (1939), the Board excluded the son and daughter of the president and vice-president of the employer because "by virtue of the[ir] relationship . . . their interests are sufficiently distinguished from those of the other employees to warrant their exclusion from the unit . . . ." The Board adhered to this policy in subsequent cases.[13] In P. A. Mueller and Sons, Inc., 105 NLRB 552, 553–554 (1953), the Board excluded a son and nephew of the employer's owner-president in a small closely held corporation, stating:

. . . the Board long has excluded from the appropriate unit those employees who lack sufficient interests in common with the employes included in the unit. The Board early decided

in this connection that the familial bond between an employer and employee is in certain cases so close as to remove the near relative from the "community of interest" shared by the other employees. The interests of such near relatives are identified not with their fellow-workers, but with management itself. (Footnotes omitted.)

The Board reasoned:

The inclusion of a close relative of the employer in a bargaining unit with the other employees in a particular plant may as effectively hinder the employees in organizing themselves and bargaining collectively as would the intrusion of any representative of management. In the eyes of the other employees, a son or nephew of the employer, although he may work with other workers, is intimately allied with management. Accordingly, the employees well may view with suspicion his membership in the bargaining unit, especially where, as here, the employing enterprise is small and closely held. (Footnotes omitted.)

However, the Sixth Circuit, in NLRB v. Sexton, 203 F.2d 940 (1953), held that the Board had no discretion to exclude individuals from bargaining units because of a lack of community of interest *solely* on the basis of family relationships. *Sexton* limited the Board's discretion in excluding employees for family-related reasons to the literal terms in § 2(3) of the Act,[14] excluding from the definition of "employee" an "individual employed by his parent or spouse . . . ."

After *Sexton* the Board decisions entered upon a zigzag course. In Interna-

---

10. Wheeler Van Label Co. v. NLRB, 408 F. 2d 613 (2nd Cir. 1969), cert. den., 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969).

11. Eastern Camera, 140 NLRB 569, 574–575 (1969): "A confidential employee is one who assists and acts in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations."

12. Illinois State Journal-Register, Inc. v. NLRB, 412 F.2d 37 (7th Cir. 1969).

13. Jerry and Edythe Belanger, 32 NLRB 1276 (1941); O. Philip Faucher, 78 NLRB 1172 (1948); Peter Pan Bus Lines, 82 NLRB 830 (1949); Rosedale Passenger Lines, Inc., 85 NLRB 527 (1949); Stanislaus Implement & Hardware Co., 92 NLRB 897 (1950).

14. "The term employee . . . shall not include . . . any individual employed by his parent or spouse . . . ."

tional Metal Products Co., 107 NLRB 65, 67 (1953), the Board, citing *Sexton*, overruled *sub silentio Mueller's* "irrebutable conclusion that the mere existence of a [a family] relationship . . . negated the possibility of the existence of any community of interest," and held that "the mere coincidence of a family relationship between an employee and his employer does not negate the mutuality of employment interest which an individual shares with fellow employees, absent evidence that because of such relationship he enjoys a special status which allies his interest with those of management." [15]

Thus the Board, in *International Metal*, turned from the per se language of *Mueller* and required more than "mere" family relationship as a basis for exclusion from the bargaining unit. In subsequent cases the Board, with the approval of courts, inquired into the working conditions of management relatives for determination of whether they enjoyed a "special status" that required their exclusion from the bargaining unit. Exclusions based on special status were limited to relatives who enjoyed job-related benefits or privileges. A general manager's nephew who heard employee grievances, for example, was held to enjoy special status and was excluded from the unit in American Steel Buck Corp., 197 NLRB 554 (1953).[16] And the daughter of the corporate employer's secretary who was not required to punch a time clock, was not reprimanded for tardiness, and for whom no record was kept of absences for illness, was held to enjoy special status and was properly excluded, in Cherrin Corp. v.

NLRB, 349 F.2d 1001 (6th Cir. 1965), cert. den., 382 U.S. 981, 86 S.Ct. 557, 15 L.Ed.2d 471 (1966).[17]

Beginning in 1967, however, the Board returned from primary reliance upon the special status standard to the community of interest standard. In Foam Rubber City # 2 of Florida, Inc., 167 NLRB 623, 624 (1967), the Board, inter alia, held that "children of the principals of closely held corporations" should be excluded from the unit because of a lack of community of interest, using language reminiscent of the previously rejected *Mueller* decision:

> . . . we have traditionally included in bargaining units those individuals who have a community of interest with their fellow employees . . . [I]t is obvious that . . . children [of the principals of closely held corporations] because of their relationship with a substantial owner of this type of enterprise, have interests more closely identified with management than with their fellow employees.[18]

In a footnote the Board disagreed with the Sixth Circuit's *Uyeda* decision and its requirement of "affirmative evidence of special status."

From 1967 to the present, the Board has used both standards with no discernible rationale for choosing one over the other. In Buckeye Village Market, Inc., 175 NLRB 271 (1969), Pargas of Crescent City, Inc., 194 NLRB 616 (1971), and Weyerhaeuser Company, 211 NLRB No. 140 (1974), the Board held that "mere . . . family relationship" alone was insufficient to exclude a rela-

---

15. A dissenting Board member argued that the community of interest standard was viable and should be retained.

16. Seeemingly the exclusion should have been based on his apparent role as supervisor, rather than his familial relationship.

17. *See also* KERO Radio-TV, 116 NLRB 194 (1956); Garden Super Market, 148 NLRB 583 (1964); Payless Stores, 150 NLRB 518 (1964); Big Ben Dept. Stores, Inc., 160 NLRB 1925 (1966); Uyeda v. Brooks, *su-*

pra; Udaco Manufacturing Co., 164 NLRB 700 (1967); NLRB v. Jackson Farmers, Inc., 432 F.2d 1042 (10th Cir. 1970), cert. den., 401 U.S. 955, 91 S.Ct. 974, 28 L.Ed.2d 238 (1971).

18. The Board in *Foam Rubber City* not only returned to the community of interest standard, but, considering the close corporation a de facto partnership, pierced the corporate veil to exclude an employee who was the son of one 50% shareholder and the nephew of the other under § 2(3) of the Act.

tive from the bargaining unit, and that special status was required. A dissenter in the latter two cases argued that family relationship was sufficient for exclusion on the basis of lack of community of interest. In its decision herein, 200 NLRB No. 118 (1972), in Parisoff Drive-In Market, Inc., (citing Caravelle I), 201 NLRB No. 102 (1973), and in Cerni Motor-Sales, Inc., 201 NLRB No. 133 (1973), the Board used the community of interest standard to exclude relatives.

### B.

Against the foregoing decisional history, we now consider the precise issue before us in the light of this court's decision in *Caravelle I*.

In Judge Sprecher's opinion for the court in *Caravelle I*, he described the corporation, shareholders, management, and family relationships of the six employees:

> [Caravelle] manufactures wood products in South Chicago Heights, Illinois. It is a corporation whose stock is owned in equal portions by ten shareholders: Joseph Paradiso (president), his cousins Louis Paradiso (vice president), John Paradiso (head of receiving and mill room), Donald Paradiso (head of assembly), Nick Paradiso (head of shipping and packaging) and Rose Lecoure; the husband of another cousin, Richard Valentino; George Grutzius (head of mill room); Donald Kloss (head of finish room); and Charles Gaines. Thus 70 percent of the shares are owned by members of the Paradiso family; seven of the ten stockholders are active in the management of the Company.

> Among the persons employed by the Company are eight relatives of shareholders: Gina and Paul Paradiso, the wife and son of Louis Paradiso; Deborah Paradiso, the daughter of John Paradiso; Inez Paradiso, the wife of Donald Paradiso; Irene, Raymond and Dennis Paradiso, the wife and sons of Nick Paradiso; and Donald W. Kloss, the son of Donald Kloss. 466 F.2d at 676.

The court rejected the Board's expanded interpretation of § 2(3) of the Act, which would permit the per se exclusion of children and spouses of "substantial" shareholders of closely held corporations from bargaining units; and found that the Board had the power pursuant to § 9(b) of the Act to exclude children and spouses from the bargaining unit provided it did so on a case by case basis and not by application of a per se rule. The court noted that there were precedents for exclusion, on a case by case basis, of relatives who enjoy special status. But because the Board applied a per se rule and "relied entirely on the fact of family relationship" in excluding, under § 9(b), the six relatives from the unit, the court remanded the proceeding to the Board, with guidelines, for a factual determination of whether the votes of the six Caravelle relatives should be counted: "there are a number of factors the Board might consider" on remand in its redetermination of the unit:

> how high a percentage of stock the parent or spouse owns, how many of the shareholders are related to one another, whether the shareholder is actively engaged in management or holds a supervisory position, how many relatives are employed as compared with the total number of employees, whether the relative lives in the same household or is partially dependent on the shareholder. 466 F.2d at 679.

The court's holding appears to favor the special status standard, since *Sexton* and other special status decisions were cited as authority. However, the court noted the Regional Director's finding "that none of the challenged employees enjoy[ed] a 'special status,'" 466 F.2d at 678, *i. e.*, no job-related benefits or privileges, but did not consider that finding dispositive. It is important to keep in mind that none of the guidelines suggested by the court to be used by the

Board on remand is job-related. All pertain to family relationship.

■ The court rejected the "irrebuttable conclusion" that family relationship automatically precluded the existence of a community of interest with non-relatives, while at the same time rejecting the idea that job-related benefits or privileges must be proved before a relative could be excluded. We conclude, therefore, that *Caravelle I* fashioned an expanded community of interest standard that permits the Board to exclude employees on the basis of family relationship—without regard to job-related factors—provided the factual finding implicitly required by the guidelines is made in each case.

■ The court in *Caravelle I* drew upon the Board's earlier and more recent decisions and set forth several elements arising from the familial relationship itself that could be the basis of the Board's redetermination of whether the Caravelle relatives should or should not be included in the unit. We think the court gave the Board proper guidance. We also think the Board properly applied *Caravelle I*.

### C.

Great literature gives testimony to basic facts arising from family relationships: Blood is thicker than water. The institution of the family is a human need; "the relation of parents and children . . . creates crises and tensions, conflicts between love and duty, between reason and the passions

. . . . "[19] Family peace and tranquility requires a form of government, and historically the father has been considered the head.[20] So long as children are in the home under the care of parents, they are not free from the family rule which implies the duty of respect on the part of the children.[21]

■ The foregoing literary testimony is corroborated by human experience generally. From all of this, we think the Board, in its discretion, could infer that under the circumstances before us it is probable that were the six relatives (or at least four, as will be seen *infra*) not excluded from the bargaining unit, their presence in the unit would interfere with the "fullest freedom" of the other employees engaged in the selection of their bargaining unit.

We agree with one Board member's views expressed in a fairly recent decision:

The inclusion of a close relative of management in bargaining unit with other employees in a particular plant may as effectively hinder the employees in organizing themselves and bargaining collectively as would the intrusion of any representative of management . . . .

[Their] presence at union meetings would, considering the likelihood of [their] conveying information to the Employer . . . inhibit adequate and accurate expression of views and freedom of action on the part of the membership; and even if it did not,

---

19. The Family; Introduction, Ch. 26, Vol. I, p. 493, *The Great Ideas, A Syntopicon of Great Books of the Western World*, Encyclopaedia Britannica, 1952.

20. "It is a dictate of reason that when there is a marriage, children should follow the station or condition of the father." Montesquieu, *The Spirit of the Law*, Book 23.

21. The Family; Introduction, *op. cit.*
Our immediate family is a part of ourselves. Our father and mother, our wife and baby, are bone of our bone and flesh of our flesh. When they die, a part of

our very selves is gone. If they do anything wrong, it is our shame. If they are insulted, our anger flashes forth as readily as if we stood in their place. Our home comes next . . . . Its aspects awaken the tenderest feelings of affection; and we do not easily forgive the stranger who, in visiting it, finds fault with its arrangements or treats it with contempt. All these different things are the objects of instinctive preferences coupled with the most important practical interests of life. William James, *Principles of Psychology*, Ch. X, p. 189.

communication of such internal matters could effectively undermine or impair the ability of the Union to achieve its legitimate goals. Pargas of Crescent City, Inc., 194 NLRB at 617–618 (Member Jenkins, dissenting).

#### D.

■ The Supreme Court's decision in NLRB v. Savair Manufacturing Co., 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973), does not militate against our decision. In that case the Court held that a union could not, consonant with the neutrality requirement of the Act, waive initiation fees for those employees signing union recognition slips prior to a representation election. Mr. Justice Douglas, writing for the Court, stated: "Any procedure requiring a 'fair' election must honor the right of those who oppose a union as well as those who favor it." 414 U.S. at 278, 94 S.Ct. at 499.

*Savair* is inapposite. Unit determinations focus upon common interest in employment conditions within the unit; they do not focus upon the representation election. Relatives may be excluded, not because they may vote against the union, but because, in the Board's informed judgment, they may not share the "common interest in the terms and conditions of employment" [22] with the other members of the unit. For the same reason, confidential, part-time, and summer employees may be excluded from the unit. Indeed, if the broad language of *Savair* were applicable to unit determinations, even relatives Caravelle concedes should be excluded—those enjoying special status—could not be. We are not persuaded that by applying the community of interest standard here the Board violated the neutrality rule.

#### II.

The Board's decision on remand shows that it substantially followed the guidelines suggested by this court in *Caravelle I*. The Board stated:

> The Company, a corporation, has 10 stockholders who own equal shares therein: Joseph Paradiso (president and chief administrative officer); his cousins who are brothers: Louis Paradiso (vice president in charge of production, plant management, and scheduling), John Paradiso (treasurer and head of receiving and millroom), Donald Paradiso (head of assembly), and Nick Paradiso (head of shipping and packaging); their sister, Rose Lecoure, and Richard Valentino, the husband of another sister; George Grutzius (secretary and head of millroom), and Charles Gaines. All of the shareholders except Gaines are directors of the corporation, and all except Gaines and Valentino are "active in the business." (Footnote omitted.)

That paragraph indicates the "high" percentage of stock owned by parents and spouses, the relationship of each to the other, and the managerial and supervisory activities of the shareholders. The record discloses that a total of 80 ballots were cast, and Joseph Paradiso testified that Caravelle employed approximately 88 or 89 employees.[23]

As stated *supra,* the Board "presum[ed]" that Inez and Irene, and Raymond and Dennis, Paradiso lived in the same household with their husbands and father, respectively, and that Raymond and Dennis also lived in the family home and were economically dependent on their father. This presumption we think was reasonable, and there was no testimony to rebut it.

We noted above that the Board failed to decide whether Paul Paradiso and Donald Kloss resided at home or were economically dependent upon their fathers. However, even if we remanded the proceeding to the Board for determination of the qualification of Paul Par-

---

22. *Uyeda, supra.*

23. Tr. 11.

adiso and Donald Kloss, and if the Board decided their votes should be counted, the result would not affect the validity of the Union's certification as bargaining agent. If the two votes were counted and they were cast against the Union, the result would be 35 votes for the Union and 34 against the Union. Accordingly, we need not reach the issue of exclusion of Paul Paradiso and Donald Kloss.

For the several reasons stated, the Board's order will be enforced.

STEVENS, Circuit Judge (concurring).

Subsequent to the decision in *Caravelle I*, the Supreme Court reminded us that the statute is "wholly neutral" in requiring respect for those who oppose a union as well as for those who favor one. See NLRB v. Savair Mfg. Co., 414 U.S. 270, 278, 94 S.Ct. 495. That reminder did not purport to change the law and, therefore, does not justify a refusal to accept *Caravelle I* as the law of this case.

I think Judge Kiley is correct in his interpretation of *Caravelle I* as holding that an employee-relative may be "special" in the sense that he does not share with his co-workers a common interest in the terms and conditions of their employment, and yet not be sufficiently special for the Board to find that he enjoys a "special status" as that term has heretofore been used. I am not at all sure that this special new category will be identifiable by any standard other than probable opposition to the union at election time [1]—which is obviously an impermissible standard under *Savair*— but my doubts about the impact of *Caravelle I* must be subordinated to my duty to respect it. Notwithstanding those doubts, I therefore concur in Judge Kiley's well considered opinion.

[1]. Judge Kiley correctly describes *Caravelle I* as having fashioned an "expanded community of interest standard." The original "community of interest" standard was developed prior to the enactment of the Taft Hartley Amendment mandating neutrality at election time.