**LINN GEAR COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–2224.

United States Court of Appeals,
Ninth Circuit.

Nov. 21, 1979.

Verne W. Newcomb, Wayne D. Landsverk, Newcomb, Sabin, Meyer & Schwartz, Portland, Or., for petitioner.

Allison Beck, N. L. R. B., Washington, D. C., for respondent.

Before HUFSTEDLER and KILKENNY, Circuit Judges, and GRANT, District Judge.*

KILKENNY, Circuit Judge:

This case is before us on the petition of Linn Gear Company [Linn Gear] for review of a summary judgment and order granted by the National Labor Relations Board [Board] (29 U.S.C. § 160(f)), and cross-application of the NLRB for enforcement of that judgment order (29 U.S.C. § 160(e)).

The NLRB on a motion for summary judgment found that Linn Gear violated § 8(a)(1) and (5) of the National Labor Relations Act [the Act], 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain with the International Association of Machinists & Aerospace Workers [the Union].

## ISSUE

In the final analysis, the principal issue presented on this appeal is whether a genuine issue of fact is presented by the record. If so, the case must be reversed.

## BACKGROUND

On March 10, 1977, the Union filed a representation petition with the Board, seeking certification as the collective bargaining representative of Linn Gear's employees. Linn Gear and the Union, pursuant to an agreement for consent election agreed that the appropriate bargaining unit included "all employees of the employer . . . excluding office clerical employees, salesmen, professional employees, guards and supervisors as defined in the Act."

On April 21, 1977, the Regional Director of the NLRB conducted an election in the bargaining unit. The tally of the ballots showed fifty-four votes cast in favor of the Union, forty-five votes cast against the Union, and nine challenged ballots. Because the challenged ballots were sufficient in number to affect the outcome of the election, the Regional Director "investigated," but did not hold a formal hearing. The ballot of one Brian Hartl was challenged by the Union on the ground that as the son of the owner of the stock of Saber Sprocket, the company with the controlling interest in Linn Gear, he was not properly included in the bargaining unit and, therefore, was ineligible to vote. From the facts gathered, the Regional Director concluded that since Brian Hartl's father was not only the ma-

---

* The Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation.

jority stockholder of the controlling company, but was also president of and active in the management of Linn Gear, and inasmuch as Brian, although paying for his board and room, was living at home, it was a virtual certainty that he would be closer to the family than to the Union. Consequently, Brian did not share a community of interest with the other employees.

The Board, in granting summary judgment and in holding that Linn Gear was not entitled to a hearing on its contention that the vote of Brian should have been counted, relied entirely on *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 162, 61 S.Ct. 908, 85 L.Ed. 1251 (1941), and two of its own regulations. In *Pittsburgh Plate Glass*, in contrast to the case before us, the parties had a full and complete hearing. The court observed that the Union (1) participated in the hearing, (2) called witnesses, and (3) cross-examined those called by the other parties. *Pittsburgh Plate Glass, supra,* at 162, 61 S.Ct. 908. Here, the only affirmative action taken by Linn Gear was to consent to the holding of the election. Nowhere did it waive its right to be heard on the question of which employees were qualified to vote in the election. Clearly, *Pittsburgh Plate Glass* is not controlling on the record before us.

However, the fact that the Board may have entered the summary judgment for the wrong reason does not, on this record, prevent us from considering the appeal and deciding whether the summary judgment was properly entered on the merits.

After announcing its view that *Pittsburgh Plate Glass* was controlling, the Board proceeded to enter findings of fact and conclusions of law on the merits. In doing so, it necessarily found as a matter of law that the Regional Director properly sustained the challenge to the vote of Brian Hartl. Evidently the general counsel recognizes the weakness of the Board's conclusion that *Pittsburgh Plate Glass* was controlling and on this appeal has proceeded to argue the case on the merits. In these circumstances, we shall proceed to decide whether a genuine issue of fact was presented which would prevent the entry of summary judgment.

## SUMMARY JUDGMENT

The grant of a summary judgment is proper only where there is no genuine issue of material fact, or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. *Alson Mfg. Aero. Div. of Alson Indus., OMC. v. NLRB*, 523 F.2d 470, 472 (CA9 1975); *NLRB v. Smith Industries*, 403 F.2d 889, 893 (CA5 1968); *NLRB v. KVP Sutherland Paper Co.*, 356 F.2d 671 (CA6 1966); accord, *Smith v. Gross*, 604 F.2d 639 (CA9 1979). *Pepper & Tanner, Inc. v. Shamrock Broadcasting, Inc.*, 563 F.2d 391, 393 (CA9 1977); *Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59, 63 (CA9 1973).

Numerous inferences favorable to Linn Gear's position may be drawn from the paucity of facts on the record before us. At the time of the election, Brian Hartl was 22 years old. He may be a maverick and have little contact with his family. He may come and go from his residence and take meals at different times from his father. Even if he does eat with his father, Brian may very well be at odds with him on the issues concerning the employees, the Union, and the company. It is entirely possible that Brian enjoys a very good relationship with the other employees in the bargaining unit, and shares many of their concerns and ideas. He may have little or no contact with his father while at work. In short, a hearing is necessary to shed light on these matters which bear directly on the question of whether Brian Hartl shares a community interest with his fellow employees.

The failure of the Board to hold a hearing in conformity with its notice, combined with its insistence on the entry of a summary judgment, deprives us of the benefit of the trier of facts' conclusions on the credibility of witnesses, including that of Brian Hartl on: (1) his relationship to the Union; (2) his communication with other Union members; (3) his relationship with his fa-

ther and other members of his family; (4) special favors, if any, granted to him as an employee; and (5) any other pertinent facts. On the present record, we find ourselves in a vacuum and hold that on the admitted facts, the pleadings and other material before us, a genuine issue of material fact was presented as to whether Brian Hartl should have been included in the unit and his vote counted. Consequently, the entry of summary judgment was improper and the case must be remanded for a hearing before the Board. That being the case and because this circuit has never expressed itself on the standards to be applied by the Board to a factual background similar to that before us, we deem it appropriate to fix guidelines to be applied by the Board to the facts adduced in the hearing on the remand.

## ANALYSIS AND GUIDELINES

■ In determining whether to include or exclude a blood related employee from a designated bargaining unit, the Board has sometimes utilized 29 U.S.C. § 152(3), which in pertinent part provides:

> "(3) The term 'employee' shall include any employee, . . . but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, *or any individual employed by his parent or spouse* . . . ." [Emphasis supplied.]

and at other times 29 U.S.C. § 159(b), which in pertinent part provides:

> "(b) The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof: Provided . . . [Specific exclusions not here appropriate.]"

The Board has not always indicated why it chose one section over the other, but has traveled a zig-zag course in making its determination.

For example, in early Board decisions, employees employed by corporations were excluded from the unit because of their familial relationships with corporate officers for the reason that they lacked a community of interest with the other employees in the bargaining unit. Examples of this type of holding are *Louis Weinberg Associates,* 13 NLRB 66, 69 (1939), and *Peter A. Mueller & Sons, Inc.,* 105 NLRB 552 (1953). This policy of excluding employees who possessed familial bonds with management was maintained by the Board until the Sixth Circuit in *NLRB v. Sexton,* 203 F.2d 940 (1953), held that the Board exceeded its authority in excluding employees solely on the basis of family relationships.

Subsequent to *Sexton,* the Board began requiring more than mere "family relationship" before it would exclude particular employees from a bargaining unit. It commenced inquiring into whether the employee enjoyed some "special status or privilege, benefit, or favored treatment as a result of the blood relationship with management." See *International Metal Products Co.,* 107 NLRB 65 (1953); *Cherrin Corp. v. NLRB,* 349 F.2d 1001 (CA6 1965), cert. denied 382 U.S. 981, 86 S.Ct. 557, 15 L.Ed.2d 471 (1966). In *Foam Rubber City No. 2 of Florida, Inc.,* 167 NLRB 623, 624 (1967), the Board retreated from the "special status" analysis and § 9(b) of the Act, and focused on whether the employee lacked a "community of interest" with other employees in the bargaining unit. There, the Board looked through the "corporate veil" and beyond the employer's corporate form and held that for all practical purposes the blood related officers of the corporation were the real employers of their blood related employee. The Board then went on to say that to hold otherwise and include the related employee in the unit on the *technical ground that he was an employee of the corporation* would not only be unrealistic, but also be wholly at odds with the principle to be followed in applying § 2(3) of the Act to the comparable copartnership cases. Even following *Foam Rubber City No. 2,* the Board continued its ambivalent approach and applied both the "special status" and the "commu-

nity of interest" theories, without clearly indicating the reason for the selection of one over the other. *See Buckeye Village Market, Inc.,* 175 NLRB 271 (1969) and *Pareas of Crescent City, Inc.,* 194 NLRB 616 (1971), where family relationship alone was found to be insufficient to exclude an employee and *Parisoff Drive-In Market, Inc.,* 201 NLRB 813 (1973) and *Cerni Motor-Sales, Inc.,* 201 NLRB 918 (1973), where the Board applied the "community of interest" standard.

This leads us to a discussion of the two cases which we feel should control our decision and fix proper guidelines for the Board to follow in this circuit. These are the Seventh Circuit cases of *NLRB v. Caravelle Wood Products, Inc.,* 466 F.2d 675 (CA7 1972) [*Caravelle I*], and *NLRB v. Caravelle Wood Products, Inc.,* 504 F.2d 1181 (CA7 1974) [*Caravelle II*].

In *Caravelle I,* the court noted that the Board had not been consistent in its application of *Foam Rubber City No. 2* by pointing to *Buckeye Village Market, Inc.,* 175 NLRB 271 (1969), where it included in the unit the son of the store manager who owned 10% of the stock and gave as its reason "his father does not own a substantial share of the Employer's stock, and . . . *there is no evidence that he enjoys special status which allies him to management because of his father's position. . . .* 175 NLRB at 274." 466 F.2d at 675. [Emphasis supplied.]

In criticizing the Board's decision in *Foam Rubber City No. 2,* the *Caravelle I* court used the following language:

"The *Foam Rubber City* formulation which excludes children and spouses of 'substantial' shareholders of closely held corporations, *has proved so elastic that it virtually repeals the statutory language.* We must refuse to enforce the order to bargain because it was based on the exclusion of [seven blood related employees] as 'employees' under section 2(3)." 466 F.2d at 678. [Emphasis supplied.]

In other words, the *Caravelle I* court refused to expand the exclusionary category of § 2(3) so as to automatically exclude a shareholder's blood related employee from the bargaining unit.

Beyond that, the *Caravelle I* court refused to follow the Board's suggestion to automatically exclude the blood related employees from the bargaining unit under the provisions of § 9(b) of the Act, 29 U.S.C. § 159(b) (1965). The court there went on to say that it saw no reason to give the Board total discretion under § 9(b) to accomplish what it could not do under § 2(3). In reversing and remanding to the Board, the *Caravelle I* court directed a review of the various factors which would indicate how strong the employee's identification might be with the owner of the business as against the interests of the employees, specifically mentioning the following:

"There are a number of factors the Board might consider under section 9(b): how high a percentage of stock the parent or spouse owns, how many of the shareholders are related to one another, whether the shareholder is actively engaged in management or holds a supervisory position, how many relatives are employed as compared with the total number of employees, whether the relative lives in the same household or is partially dependent on the shareholder." 466 F.2d 675 at 679.

In *Caravelle II,* the Seventh Circuit approved the Board's decision which reaffirmed its earlier ruling that six employees should be excluded from the unit, not because of "job-related" factors, but because of the pattern of family ownership and control over the business which would indicate that the related employees may not share a common interest in the terms and conditions of employment. The court concluded that *Caravelle I* fashioned an "expanded community of interest" test under § 9(b) of the Act. Even since *Caravelle II* was decided, the NLRB and the courts have alternated between the job-related "special status" test (*Tops Club, Inc.,* 238 NLRB No. 130 (1978)) and the "expanded community of interest" test. *NLRB v. Warner,* 587 F.2d 896 (CA8 1978).

While we have held that § 9(b) of the Act vests the Board with broad discretion in

determining the appropriate bargaining units " 'in order to assure to employees the fullest freedom in exercising the rights guaranteed by this [Act]' " *NLRB v. Don Burgess Construction Corp.,* 596 F.2d 378, 386 (CA9 1979), and *NLRB v. Lerner Stores Corp.,* 506 F.2d 706 (CA9 1974), and that the decisions by the Board in this area are to be overturned only upon a showing that they are arbitrary and capricious, *Victoria Station v. NLRB,* 586 F.2d 672, 675 (CA9 1978), we have also said that "[i]n determining whether a particular employee is properly included within a designated bargaining unit, a key consideration is whether the employee shares a sufficient 'community of interest' with other members of the unit." *NLRB v. Adrian Belt Co.,* 578 F.2d 1304, 1312 (CA9 1978). We discern no significant distinction between the "common interest in the terms and conditions of employment" mentioned in *Caravelle II* and the "community of interest" emphasized in the Ninth Circuit case of *NLRB v. Adrian Belt Co.* The latter is consistent with the guidelines outlined in *Caravelle I* and approved in *Caravelle II.* We adopt them as a standard to be applied by the Board in this circuit. To those factors listed in *Caravelle I,* we would add (1) the activity, if any, of the employee in the Union, (2) the total number of employees as against the number of blood related employees, and (3) the overall ties and social activities of the family involved.

## CONCLUSION

Inasmuch as the Regional Director failed to hold a hearing to determine the status of Brian Hartl and failed to articulate the guidelines, if any, he used in concluding that the Hartl vote should not be counted, and because on a hearing additional evidence might be adduced, as well as different inferences drawn from the facts, we hold that the record presented a genuine issue of fact preventing the entry of a summary judgment.

Consequently, the summary judgment must be vacated and the cause remanded to the Board to re-examine the nine challenged ballots. Re-examination of Brian Hartl's ballot will require a hearing under the guidelines that we have laid down, unless the Board shall determine, after examination of the other ballots, that the Hartl ballot was irrelevant.

The order is vacated and the cause is remanded to the Board for further proceedings consistent with the views herein expressed.