Sandra Jean SMITH, etc.,
Plaintiff-Appellee,

v.

RETIREMENT FUND TRUST OF the PLUMBING, HEATING AND PIPING INDUSTRY OF SOUTHERN CALIFORNIA, Defendant-Appellant.

No. 87-6513.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1988.

Decided Sept. 14, 1988.

As Amended Oct. 28, 1988.

Elizabeth R. Lishner, Pappy & Davis Law Corp., Los Angeles, Cal., for defendant-appellant.

Ronald Dean, Pacific Palisades, Cal., for plaintiff-appellee.

Before HUG, POOLE and THOMPSON, Circuit Judges.

POOLE, Circuit Judge:

## OVERVIEW

The Retirement Fund Trust of the Plumbing, Heating and Piping Industry of Southern California (Trust) appeals from the district court's *sua sponte* grant of summary judgment in favor of Sandra Smith in an action to recover disability pension benefits due to her late husband Donald Smith and to her as a surviving spouse.[1] The district court held that § 2(3) of the National Labor Relations Act, 29 U.S.C. § 152(3) (hereafter § 2(3)), did not bar Smith's participation in the Trust during 1968–71, as the Trust claimed, and it ordered Smith's pension credits recalculated to include those years. We affirm.

## FACTS

Beginning in 1968 Smith was employed by C & H Heating Company, a corporation in which his father was a 50% shareholder. C & H was signatory to a collective bargaining agreement under which it participated in the Trust, and Smith performed work covered by that agreement. However, during 1968–71 he was not a member of the union, and C & H did not make contributions to the Trust on his behalf.

---

1. Donald Smith commenced the suit but died while it was pending; Sandra Smith was substituted as party-plaintiff.

Smith joined the union in 1972, at which time C & H reported him to the Trust and began making contributions. Shortly thereafter Smith began receiving quarterly statements of his accrued pension hours, which showed pension credits for hours worked from 1972 forward but not for work before that time.

In 1986 the trustees denied Smith's application for a disability pension on the grounds that he did not have sufficient credits to qualify. The trustees did not credit Smith for hours worked during 1968–71 because no contributions were made on his behalf during that time. Smith appealed this decision pursuant to the Trust's claims appeal procedure, arguing that because he had been performing work covered by the collective bargaining agreement during the 1968–71 period the law required that he be given pension credit whether or not his employer actually made pension contributions on his behalf during that time. The trustees denied the appeal, again declining to credit Smith for service prior to 1972. The Trust concedes that Smith's entitlement to the credits depends on whether C & H was obligated to contribute on his behalf, not on whether the contributions were actually made. It maintains that there was no obligation because as the son of a 50% owner of the corporate employer Smith was, as a matter of law, not an "employee" within the meaning of § 2(3) of the National Labor Relations Act (NLRA) and therefore was not eligible to participate in the Trust during the years in question. The National Labor Relations Board (NLRB, the Board) had never ruled that Smith was excluded as an employee under § 2(3), the question apparently never having arisen in the context of his eligibility to participate in a representation election.

Following the trustees' final denial of his claim, Smith filed this action in district court under 29 U.S.C. § 1132(a) and 29 U.S.C. § 186(c) seeking an order directing the trust to recalculate his pension based on additional credits for 1968–71 and to pay damages equivalent to the pension benefits which would have accrued prior to judgment had he been credited for the claimed

years. The Trust moved for summary judgment primarily on the grounds that Smith was not an "employee" during 1968–71 and therefore could not lawfully have had contributions made on his behalf. The district court denied the Trust's motion and *sua sponte* granted summary judgment in favor of Smith. The district court found the definition of employee in § 2(3) inapplicable where, as here, it is not used to define who is a member of a bargaining unit for purposes of certification votes and representation elections. It held that the question of participation in the Trust was controlled instead by the definitions in 29 U.S.C. § 1002 and that Smith was an employee and participant under those definitions. The district court later granted Smith's motion for attorney's fees under 29 U.S.C. § 1132(g)(1).

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, applying the same standard of review to the trustees' decision to deny benefits as did the district court. *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir.1985). The trustees' decision may be reversed only if arbitrary, capricious or made in bad faith, not supported by substantial evidence, or erroneous on a question of law. *Id.* at 711.

## DISCUSSION

### Jurisdiction

The Trust claims that the district court lacked jurisdiction because Smith's claim related to acts or omissions which occurred prior to the effective date of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* ERISA creates federal jurisdiction over actions by participants or beneficiaries to recover employee benefits due under the terms of a plan, but only "with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1132(a) and (e); 29 U.S.C. § 1144(b)(1); *Lee v. Garrett Corp. Retirement Plan*, 803 F.2d 1082, 1083–84 (9th Cir.1986). In this circuit the "cause of

action" and "act of omission" clauses of 29 U.S.C. § 1144(b)(1) are construed as creating two separate requirements. *See Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1500 (9th Cir.1984). The Trust concedes that Smith's cause of action did not accrue until benefits were denied, but it argues that the acts or omissions upon which the claim is based occurred prior to the effective date of ERISA.

■ We have stated the standard for applying the "act or omission" clause as follows:

[I]n cases where a claimant is formally denied benefits after ERISA's effective date pursuant to an unambiguous and nondiscretionary plan provision adopted before the effective date, the denial is not reviewable under ERISA.... The result is the same where a post-effective date formal denial is the inevitable result of unequivocal pre-effective date interpretations of or exercises of discretion under the plan.... [Such] cases ... must be distinguished from those in which benefits have been denied as the result of a significant act of discretion under or interpretation of the plan which took place after ERISA's effective date.

*Id.* at 1501–02. According to this standard, Smith's claim is reviewable under ERISA. The denial of benefits was not based on an unambiguous plan provision adopted before the effective date of ERISA, but rather on what the trustees thought to be the current law governing participation in a Taft–Hartley trust. It is not significant that the Trust did not contemporaneously credit Smith for the years in question or that Smith received pension statements, prior to enactment of ERISA, which reflected that he had not been given credit for those years. The failure during 1968–71 to record the pension credits is not comparable to "unequivocal pre-effective date interpretations of or exercises of discretion under the plan," because the Trust did not make a contemporaneous *decision* to refuse contributions on Smith's behalf during the years in question. It simply did not record the credits because no contributions were made, yet it concedes that Smith's entitlement to the credits does not rest on this fact. Similarly, the pension statements did not reflect an affirmative denial of credits pursuant to "an unambiguous and nondiscretionary plan provision." At most, these statements were pre-ERISA communications of a non-decision. The acts or omissions upon which Smith's claim is based occurred when the trustees considered his claim and decided to deny credit for the years 1968–71 on the grounds that as the son of a 50% shareholder he was precluded from participating in the Trust. Because this occurred well after the effective date of ERISA, the district court did not lack jurisdiction.

*Denial of Benefits*

■ The Trust argues that under § 2(3) of NLRA the offspring of a 50% owner of a corporate employer is automatically considered a non-employee excluded from the bargaining unit. That section provides in pertinent part: "The term 'employee' ... shall not include ... any individual employed by his parent or spouse." 29 U.S.C. § 152(3). The Trust further argues that persons who are excluded as employees under § 2(3) cannot lawfully participate in a Taft–Hartley trust, regardless of whether they meet the definition of employee found in ERISA, 29 U.S.C. § 1002(6). For the latter proposition it relies on *Joint Council of Teamsters No. 42 v. Associated General Contractors*, 520 F.Supp. 3 (C.D. Cal.1980), *aff'd*, 662 F.2d 531 (9th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1718, 72 L.Ed.2d 139 (1982), where we affirmed a district court decision that the owner-operators of trucking equipment who had been excluded as employees under § 2(3) could not have contributions made to the trust fund on their behalf. In that case the parties had previously litigated the status of the owner-operators, resulting in a determination that they were independent contractors expressly excluded as employees under § 2(3). *Id.* at 4. *Associated General Contractors* is applicable only if Smith either indisputably belonged to a class of persons which the Board automatically excludes under § 2(3) or if the Board had previously considered his status and

determined that Smith fell within one of the § 2(3) exclusions. In this case, the NLRB was never asked to rule on Smith's status, and, based on a review of the relevant case law, we conclude that the offspring or spouse of a 50% owner of the stock of an employing corporation is not automatically excluded as an employee under § 2(3). Consequently, we reject the Trust's argument.

Section 2(3) does not explain whether or how it is to apply in the context of a corporate employer, and historically the NLRB has taken inconsistent positions on the issue. In determining whether to exclude employees related to a controlling shareholder in a closely held corporation, the Board has sometimes relied on § 2(3) and sometimes on § 9(b), 29 U.S.C. § 159(b) (hereafter § 9(b)). *See Linn Gear Co. v. NLRB*, 608 F.2d 791, 794 (9th Cir.1979) (for a more complete account of the history of such decisions). *See also NLRB v. Action Automotive, Inc.*, 469 U.S. 490, 494–95, 105 S.Ct. 984, 987–88, 83 L.Ed.2d 986 (1985) (tracing the history of the Board's approach to excluding close relatives of substantial owners of closely held companies under § 9(b)). To our knowledge the last time the NLRB sought to exclude an employee under § 2(3) based solely on his blood-relationship with a controlling shareholder was in *Cerni Motor Sales, Inc.*, 201 NLRB 918 (1973). The Board said, "Where an individual owns 50% or more of a closely held corporation ... that individual is, for the purposes of § 2(3), the actual employer of the employees." *Id.* at 918. But the Board then went on to say that even if § 2(3) were not applicable it would have excluded the employees under § 9(b) based on a lack of "community of interest" with other employees. *Id.*

Subsequent to *Cerni* we decided *Linn Gear*, reversing summary judgment by the NLRB excluding the son of a 50% owner of the corporate employer from the bargaining unit. 608 F.2d at 793. After discussing the historical inconsistency of the Board's approach, we adopted guidelines to be followed in this circuit. *Id.* at 795. We agreed with the reasoning and result in *NLRB v. Caravelle Wood Products, Inc.*,

466 F.2d 675 (7th Cir.1972), where the Seventh Circuit "refused to expand the exclusionary category of § 2(3) so as to automatically exclude a shareholder's blood related employee from the bargaining unit" and also "refused to follow the Board's suggestion to automatically exclude the blood related employees from the bargaining unit under the provisions of § 9(b)." 608 F.2d at 795. We then adopted the factors which the Seventh Circuit had said the Board might consider in determining whether to exclude the shareholder's relatives, and added a few additional factors. *Id.* at 795–96. These factors bear on the relative's "community of interest" with other members of the bargaining unit or his "common interest in the terms and conditions of employment", and they preclude automatic exclusion on the basis of the familial relationship when the actual employer is not a parent or spouse but rather a corporation partially owned by the parent or spouse. *Id.* at 796.

Under the standards set forth in *Linn Gear* Smith was not automatically excluded as an employee. Furthermore, the record suggests that had the issue been put before the NLRB, it would not have excluded Smith from the bargaining unit based on the "community of interest" criteria. Because Smith was not excluded, either automatically or by Board ruling, he was not barred from participating in the Trust under the principles set forth in *Associated General Contractors*. The trustees' denial of benefits on that ground was based on an erroneous interpretation of the law.

*Other Claims*

 Federal courts have authority to require plan participants to exhaust available administrative remedies before bringing an action under ERISA, and "as a matter of sound policy they should usually do so." *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir.1980). The Trust argues that Smith did not exhaust his administrative remedies because in presenting his claim to the trustees he did not include all of the evidence which he later sought to present in district court. Smith explained the nature of his claim in a formal letter of

appeal from his attorney, which stated that he sought credit for the years 1968–71 and believed he was entitled to it despite his father's 50% ownership interest in C & H. The letter asserted that Smith was a member of the bargaining unit and described his independence from his father both at work and otherwise. Smith did not know the precise reason for denial of his claim until the final notice arrived, making it difficult to tailor evidence to the trustees' decision. Furthermore, given the Trust's position that Smith was excluded from participating in the Trust by virtue of his father's ownership interest in C & H, we fail to see what additional information it might have considered relevant to the decision. Despite all of this, the Trust argues that after receiving the final notice of denial Smith should have requested reconsideration and an opportunity to present additional evidence. The Trust offers no authority for this additional exhaustion requirement, and we decline to impose it. Smith squarely presented his claim to the trustees, and his administrative remedies were exhausted upon final denial of that claim. *See Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186–87 (3d Cir. 1984).

█ The Trust also asserts that it was error for the district court to deny oral argument on the issues raised in its motion for reconsideration, but failure to grant oral argument is not reversible error in the absence of prejudice. *Fernhoff v. Tahoe Regional Planning Agency*, 803 F.2d 979, 983 (9th Cir.1986). Prejudice is not self-evident from the description of the proceedings, and the Trust has not explained how it might have been prejudiced. Accordingly, we find no reversible error.

*Attorney's Fees*

█ The district court awarded Smith attorney's fees under 29 U.S.C. 1132(g)(1), which section also authorizes recovery of attorney's fees and costs on appeal. *Carpenters Southern Calif. Admin. Corp. v. Russell*, 726 F.2d 1410, 1417 (9th Cir.1984). The allowance of fees is discretionary based on consideration of these factors, among others: 1) the degree of the oppos-

ing party's culpability or bad faith; 2) the ability of the opposing party to satisfy an award of fees; 3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; 4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and 5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980). If a plan participant or beneficiary prevails in an action to enforce his rights under the plan, he ordinarily should recover attorney's fees in the absence of special circumstances making an award unjust. *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984). Although we do not believe the Trust acted in bad faith, we think the relevant factors warrant a fee award to the prevailing party. Appellee has furthered resolution of a significant legal question in bringing this action, and her complete success is indicative of the relative merits of each parties' position. Finding no special circumstances which would make an award unjust, we hold that appellee is entitled to attorney's fees and costs on appeal.

The judgment of the district court is AFFIRMED.