967 F.2d 597
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joel ZUMSTEIN, Plaintiff-Appellee,
v.
The GREAT-WEST LIFE ASSURANCE COMPANY, Defendant-Appellant.
 No. 91-35348.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 5, 1992.*
Decided June 9, 1992.
 
 Before FARRIS, WILLIAM A. NORRIS and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Great-West Life Assurance Company appeals from a summary judgment in favor of Zumstein and an award of prejudgment interest and attorney's fees. We affirm.
 
 
 3
 * Zumstein is an employee of the Joe Zumstein Logging Company. Great-West is the insurer that underwrites the company's employee health insurance plan, of which Zumstein and his daughter Janae Zumstein are beneficiaries. Janae Zumstein was born prematurely at Emanuel Hospital and Health Center in Portland, Oregon on August 14, 1988. She was discharged on November 28, 1988. During her stay, Janae Zumstein was confined in the Neonatal Special Care Unit ("NSCU"). It is undisputed that the NSCU is an intensive care unit. It is also undisputed that the policy limits "charges for confinement in an Intensive Care Unit" to $190 per day. The disputed question is whether those charges include not only general room and care charges but also itemized charges for procedures that are "ICU-related."
 
 II
 
 4
 "We interpret terms in ERISA insurance policies 'in an ordinary and popular sense as would a [person] of average intelligence and experience.' " Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir.1990). A person of average intelligence and experience would understand "charges for confinement in an Intensive Care Unit" to refer to only general room and care charges and not to charges for specific procedures that are provided in the NSCU. The policy clearly distinguishes between "charges for confinement in an Intensive Care Unit," under subsection (ii), and "charges for other hospital services and supplies," under subsection (iii). The ordinary way to understand this distinction would be to read "charges for confinement in an Intensive Care Unit" as "charges for confinement" only and not for other services that may be necessary while a patient is confined. Charges for confinement would include extra nursing and monitoring that is provided in an intensive care unit as part of the charge for general room and care but would not include the separately itemized charges that were provided as necessary to Janae Zumstein.
 
 
 5
 This distinction between "charges for confinement," for which there is a daily limit of $190 and "charges for other hospital services and supplies," for which there is not, mirrors the billing practice of the hospital, which charges a flat daily rate of $340 for "general room and care" but charges extra for other services that are provided according to a patient's need for them. The representative hospital bill included in appellant's excerpts of record groups Janae Zumstein's expenses by "area." The first area is "general room and care" at $340 per day. The second is "neonatal special care unit," under which are listed specific procedures such as intubations, phototherapy, and transfusions that were performed in the NSCU. In contrast to the general room and care charge, each of these specific procedures is billed separately. The other areas are "respiratory services--NSCU," "toxicology," "laboratory," "chemistry," "hematology," "microbiology," "special chemistry," "blood bank," "coagulation & serology," "cardiac lab," "radiology diagnostic," "ultrasound," "pharmacy," and "IV solutions/supplies." In each of these areas, specific procedures and supplies are billed separately.
 
 
 6
 Great-West's interpretation of the policy would place a patient who requires intensive care in a worse financial position than a patient who does not. The patient who is not in intensive care would be reimbursed without a daily limit for all medical procedures and supplies. The patient in intensive care, on the other hand, would be subjected to a daily limit on medical procedures and supplies that Great-West considers "ICU-related." In this case, since the hospital's charge of $340 per day for "general room and care" already exceeds the policy's $190 per day limitation, Great-West's interpretation would deny reimbursement for all procedures itemized in area two. A person of average intelligence and experience would not read the policy to produce such an anomalous result.
 
 
 7
 Contrary to Great-West's assertions, it is not necessary to adopt Great-West's interpretation in order to give force and effect to subsection (ii). Subsection (ii) is clearly designed to provide a daily limit for stays in intensive care higher than subsection (i)'s limit for regular rooms because intensive care is a more expensive room. Essentially, Great-West is asking us to rewrite subsection (iii) to read "charges for other hospital services and supplies that are not ICU-related." But the underlined words are not in the policy, and it would make little sense to insert them. We agree with the district court that under the plain terms of the policy "charges for confinement in an Intensive Care Unit" do not include separately itemized services over and above the daily charges for general room and care. We therefore affirm the district court's award of summary judgment in favor of Zumstein.[1]
 
 III
 
 8
 We review the award of prejudgment interest for abuse of discretion. Shaw v. International Ass'n of Machinists and Aerospace Workers Pension Plan, 750 F.2d 1458, 1465 (9th Cir.), cert. denied, 471 U.S. 1137 (1985). In this case, the district court found no evidence that Great-West acted in bad faith or with ill will. However, it found that the issue on which summary judgment was granted was clear and uncomplicated and that the award of prejudgment interest would not unduly burden Great-West to the detriment of other policy holders. See id. On that basis, it awarded prejudgment interest in the amount of $11,046.26.[2]
 
 
 9
 Great-West contends that an award of prejudgment interest was not necessary to make Zumstein whole because the hospital did not charge interest on Zumstein's unpaid bills. However, whether prejudgment interest is necessary to compensate the plaintiff fully is just one of the factors a district court should consider. Osterneck v. Ernst & Whinney, 489 U.S. 169, 176 (1989).[3] Zumstein informed the district court that the hospital had not charged him interest in his memorandum supporting the request for interest and fees, so it is clear the district court was not deceived in this respect.
 
 
 10
 We reject Great-West's contention that the interest award constituted punitive damages, which are not permitted under ERISA. See Kleinhans v. Lisle Sav. Profit Sharing Trust, 810 F.2d 618, 627 (7th Cir.1987). The interest award deprived Great-West of nothing but what it had gained by withholding full payment to Zumstein. The punitive nature of an award does not turn on whether the award was necessary to make the plaintiff whole but rather on whether it served to punish the defendant. In this case, it did not. We hold that the district court did not abuse its discretion in awarding prejudgment interest.
 
 IV
 
 11
 We also review the award of attorney's fees for abuse of discretion. Smith v. Retirement Fund Trust, 857 F.2d 587, 592 (9th Cir.1988). In this case, the district court correctly identified the factors to consider in deciding whether to award fees. See id. We hold that it did not abuse its discretion in weighing those factors. Great-West does not challenge the amount of fees awarded.
 
 
 12
 Zumstein is entitled to costs and attorney's fees on appeal and such fees shall be awarded if Zumstein files a timely request pursuant to Circuit Rule 39-1.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because the language of the policy is not ambiguous, we have no occasion to apply the rule that ambiguous insurance policies are construed against the drafter, a rule that this circuit applies in ERISA cases. See Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 540 (9th Cir.), cert. denied, 111 S.Ct. 581 (1990) (alternative holding). We admonish Great-West's counsel for citing out-of-circuit authority, see Brewer v. Lincoln National Life Insurance Co., 921 F.2d 150, 153-54 & n. 2 (8th Cir.), cert. denied, 111 S.Ct. 2872 (1991), for the contrary proposition, especially when Brewer discusses Kunin in footnote 2. See ABA Code of Professional Responsibility DR 7-106(B)(1); ABA Model Rules of Professional Conduct 3.3(a)(3)
 
 
 [2]
 Great-West has not challenged the district court's calculation of the amount of prejudgment interest that is due if such an award was justified
 
 
 [3]
 The Court suggested that a district court might consider "a number of factors, including whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, ... whether the plaintiff delayed in bringing the action, and other fundamental considerations of fairness." Id. at 176. However, the court declined "to specify what factors a district court must consider when deciding under federal law whether to grant prejudgment interest." Id. at 176 n. 2