24 F.3d 249
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Mitchell R. TANNER, Plaintiff-Appellant,
v.
Edward J. DERWINSKI, Secretary, William K. Anderson, H.R.
Maar, Chief Personnel Service, Defendants-Appellees.
 Nos. 92-55732, 92-55809.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 5, 1994.*
Decided April 20, 1994.
 
 Before: HALL, LEAVY, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Mitchell R. Tanner appeals pro se the district court's grant of summary judgment in favor of Edward J. Derwinski, Secretary of the Department of Veterans' Affairs, et al. ("DVA"). Tanner's primary contention is that the DVA violated the Rehabilitation Act of 1973, 29 U.S.C. Sec. 701 et seq., by terminating his employment after he suffered a heart attack. Tanner also appeals the district court's denial of his request for oral argument on the summary judgment motion.
 
 
 3
 The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1331. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and we affirm.
 
 I.
 
 4
 The DVA[1] argues that summary judgment was properly granted because Tanner did not establish that he was an otherwise qualified handicapped individual within the meaning of the Rehabilitation Act and thus failed to make a prima facie showing of discrimination.[2] Tanner contends that he raised triable issues of fact material to whether he was an otherwise qualified handicapped individual at the time of his termination.
 
 
 5
 To establish a prima facie case of wrongful termination under the Rehabilitation Act, a plaintiff must demonstrate that he is an "otherwise qualified handicapped" person and was terminated because of his handicap. See Lucero v. Hart, 915 F.2d 1367, 1370 (9th Cir.1990). An "otherwise qualified handicapped" person is one who can perform the essential functions of his job, with or without reasonable accommodation, without endangering the health and safety of the individual or others. See 29 C.F.R. Sec. 1613.702(f); Lucero, 915 F.2d at 1372.
 
 
 6
 Tanner admits that during the nine months preceding his May 9, 1989 termination, he was repeatedly told that a medical clearance was required before he could return to his former position. He further admits that prior to his termination, he failed to provide any assurance whatsoever that he was medically able to continue at his prior position. In fact, the record indicates that most of the statements and documents provided by Tanner before his termination actually support a finding that he could not safely return to work. In an application for Workers' Compensation benefits dated August 12, 1988, Tanner stated that he was fearful that returning to the same work environment would lead to death or myocardial infarction repetition within six months to a year. In his application for disabililty retirement dated August 17, 1988, Tanner stated "I would like to avoid the constant stress demands and deadlines associated with personnel work and feel high pressure work is no longer consistent with my medical condition."
 
 
 7
 These fears were echoed by Dr. Lively, Tanner's personal physician, who stated in a September 7, 1988 letter that reemployment at Tanner's previous position would "adversely affect his health and significantly increase his risk for recurrent myocardial infarction or sudden cardiac death". In connection with a Merit Systems Protection Board proceeding, VA Personnel Physician Hamms reviewed Tanner's medical records and in a letter dated March 27, 1990, stated "I would strongly recommend against [Tanner] returning to any duty. Without a more clearly defined list of specific types of duties which Mr. Tanner might find stressful, I would not be able to recommend Mr. Tanner for reassignment." Thus, where his workers' compensation and disability retirement claims were concerned, Tanner seemed intent on demonstrating that his medical condition would not permit him to return to his former position.
 
 
 8
 Tanner argues that the medical clearance required to prove he was an otherwise qualified handicapped individual was contained in progress notes issued by Dr. Archie on May 31, 1989. These notes stated that Tanner was "here for clearance to return to work". Dr. Archie's impression was as follows: "Cardiac status--stable--There are no medical restrictions for Mr. Tanner to return to work in Personnel." While the progress notes state both Tanner's reason for the examination and Dr. Archie's conclusion that he could safely return to his prior position, the notes fail to specify the basis for Dr. Archie's conclusion.
 
 
 9
 Tanner does not dispute that the progress notes were not submitted until June 8, 1989, a month after his termination. Tanner claims, however, that he actively pursued the required medical evidence from the Veteran's Affairs Medical Center ("VAMC") in New Orleans long before his termination date. Tanner was apparently examined on April 5, 1989 and told that he would not have difficulty in obtaining the medical evidence necessary for him to return to his prior position.
 
 
 10
 In a letter dated April 6, 1989, Tanner informed the DVA that he had recovered from his heart attack, was ready to return to his former position, and was in the process of obtaining a medical clearance from his physician at the VAMC in New Orleans. These sentiments were echoed in Tanner's April 24 letter to the DVA, which stated that he wanted to return to his previous position, but was encountering delays in obtaining medical clearance from the VAMC in New Orleans.[3]
 
 
 11
 Despite Tanner's assertions, the undisputed evidence indicates that, prior to be being terminated, Tanner failed to provide an adequate medical clearance despite being told that such evidence was required for reemployment. See Bailey v. Tisch, 683 F.Supp. 652, 658 (S.D.Ohio 1988) (finding that plaintiff was not an "otherwise qualified handicapped" person because he failed to provide medical evidence that his heart condition was stable). Furthermore, Tanner consistently represented his medical condition in different ways depending upon which agency was involved. For instance, on June 19, 1989, weeks after proffering Dr. Archie's progress notes, Tanner was still asserting in his claim for disability retirement that he was "disabled because of a medical condition, which [was] incompatible with retention in [his] previous Staffing Assistant position." This statement is indicative of Tanner's pervasive attempts to keep all of his options open. We affirm the district court's grant of summary judgment.[4]
 
 II.
 
 12
 Tanner argues that the district court erred in denying his request for oral argument. Even assuming appellate jurisdiction exists, see Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir.1986), this argument is without merit. Failure to grant oral argument is not reversible error in the absence of prejudice. See Smith v. Retirement Fund Trust, 857 F.2d 587, 592 (9th Cir.1988). Here, Tanner fails to specify any additional arguments that he would have raised at oral argument. "Prejudice is not self evident from the description of the proceedings, and [Tanner] has not explained how [he] might have been prejudiced." Id. Therefore, Tanner's argument that it was error not to grant him oral argument must fail. See id.; D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1389 (9th Cir.1990).
 
 
 13
 AFFIRMED.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In a Rehabilitation Act case against a federal agency, the proper defendant is the head of that agency. See Johnston v. Horne, 875 F.2d 1415, 1420 (9th Cir.1989). Thus, Appellees Marr and Anderson were correctly granted summary judgment as improper defendants
 
 
 [2]
 Tanner also claims that the district court erred in finding that he had no cause of action under the Veterans Reemployment Rights Act (38 U.S.C. Sec. 2021 et seq.). This argument is without merit as Tanner did not leave his position due to military commitments, but rather was removed due to disability. See 38 U.S.C. Secs. 2021(a) and 2024
 
 
 [3]
 Tanner also asserts that the VAMC gave him until September 30, 1989 to submit a medical clearance. It is true that on March 31, 1989, the DVA extended Tanner's leave without pay ("LWOP") status. However, the DVA did not definitively extend the LWOP status until September 30, but merely stated that the status would not be extended beyond that date
 
 
 [4]
 Because we affirm the district court's finding that Tanner is not an otherwise qualified handicapped individual, we need not address Tanner's argument that the DVA failed to reasonably accommodate his handicap as required by 29 C.F.R. Sec. 163.704(a). See Fuller v. Frank, 916 F.2d 558, 561 (9th Cir.1990)