57 F.3d 1077
 Pens. Plan Guide P 23911Q
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Ellis MILLS, Plaintiff-Appellant,
v.
TWENTIETH CENTURY-FOX FILM CORPORATION; Fox, Inc. Pension
Plan, Defendant-Appellees.
 No. 94-55185.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 9, 1995.*
Decided June 13, 1995.
 Before: PREGERSON, POOLE, and D.W. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Ellis Mills appeals the district court's grant of summary judgment in favor of Appellees Twentieth Century Fox Film Corporation and Fox, Inc. Pension Plan (collectively "Fox") on his claim for benefits due under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. Secs. 1001 et seq. We hold that the district court did not have subject matter jurisdiction under ERISA. Accordingly, we remand to the district court for dismissal.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 Mills began working for Revue Studios in 1959 in a bargaining unit position covered by the multiemployer Motion Picture Industry Pension Plan ("the MPIPP"). On July 25, 1960, Mills began working for General Films, also in a bargaining unit position covered by the MPIPP. In 1964, when Deluxe Film Laboratories, Inc. (a subsidiary of Twentieth Century Fox Film Corporation, which is a wholly owned subsidiary of Fox, Inc.) acquired General Films, Mills continued to work in a bargaining unit position under the MPIPP. Deluxe promoted Mills to a management position on December 26, 1965, where he remained until his retirement on January 31, 1986.
 
 
 4
 The Fox, Inc. Pension Plan ("the Fox Plan") in effect when Mills was promoted to management provided that individuals on behalf of whom Fox made contributions to a pension plan pursuant to a collective bargaining agreement would not be considered employees for purposes of participation in the Fox Plan "from and after the date when such liability to make such payments first commences to accrue." In addition, Carleton Hunt, the President of Deluxe, wrote to MPIPP in 1965 to indicate that persons who had participated in the MPIPP prior to assuming a non-bargaining unit position would continue participation in the MPIPP, pursuant to the MPIPP provision for employer designation of continuing participants. Although the text of the Fox Plan was revised in 1974, the relevant provision retained the exclusion for individuals working for Fox who were "member[s] of another plan to which the Company is making contributions for the purpose of providing a pension for such person."
 
 
 5
 During the entire period of Mills' employment, Mills and Deluxe contributed to the MPIPP and considered Mills a proper active participant in the MPIPP. Several times during the late sixties and early seventies, however, Mills inquired orally about transfer to the Fox Plan and was told that he could not do so. Sometime around 1970, he also made a "special request" to be allowed to transfer to the Fox Plan, and that request was denied. Mills knew that others had made special requests and had also been denied. Mills was informed that company executives had decided that bargaining unit employees who were promoted would continue membership in MPIPP and be ineligible for the Fox Plan. He understood that the Deluxe executive who made the decision considered the MPIPP a better plan, because the Fox Plan was not funded. Mills indicated that he knew he had no choice other than to remain in the MPIPP from the time of Carleton Hunt's executive decision.
 
 
 6
 In 1989, Mills learned that two other Fox employees who had been promoted from bargaining unit positions to management had withdrawn from the MPIPP and enrolled as members of the Fox Pension Plan in 1970. Mills decided that he was not a proper member of the MPIPP, because he had not filed an election to remain in the MPIPP and because he interpreted the Hunt letter to apply only to those employees who were non-affiliated at the time the letter was written. Mills also interpreted the Fox Plan exclusion to be inapplicable unless Mills was a "proper" participant in the MPIPP. Thus, Mills concluded that he had been a member of the Fox Plan from the time that he was promoted to management in 1965. On that basis, Mills submitted a formal request for benefits under the Fox Plan, but the Retirement Board denied the request on August 15, 1990 and confirmed the denial on November 19, 1990. The denial relied on Mills' participation in the MPIPP, which rendered him ineligible for participation in the Fox Plan under the consistent interpretation of the provisions deeming such persons not to be employees, according to the Fox administrators.
 
 
 7
 On February 2, 1991, Mills sued the Fox Plan, pursuant to 29 U.S.C. Sec. 1132(a)(1)(B), for monetary damages for pension benefits due. The district court granted summary judgment in Fox's favor. The district court ruled that Mills' claim for benefits accrued, and the statute of limitations began to run, when the Fox Plan formally denied Mills' 1990 application for pension benefits. Therefore, the court ruled that it had subject matter jurisdiction over the claim. However, the court ruled that Mills' claim was barred by laches because of the defense and economic prejudice resulting from Mills' twenty-five-year delay in contesting Fox's denial of participation in the Fox Plan. The court also reached the merits to rule that the Fox Plan had not abused its discretion in determining that Mills was ineligible to participate. Mills appeals the district court's decision that the doctrine of laches bars his claim, and he appeals the court's decision that the Fox Plan did not abuse its discretion in denying him benefits.
 
 DISCUSSION
 
 8
 Although the Fox Plan does not contest subject matter jurisdiction on appeal, Mills has briefed the issue and we are required to consider subject matter jurisdiction sua sponte. " '[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.' " FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)) (internal quotations omitted); Harris v. Provident Life & Accident Ins. Co., 26 F.3d 930, 932 (9th Cir.1994).
 
 
 9
 Applying the two-pronged test established in Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496 (9th Cir.1984), the district court concluded that it had subject matter jurisdiction over Mills' claim as a federal question under ERISA because the cause of action accrued and the relevant trustee acts or omissions occurred in 1990, after the January 1, 1975 effective date of ERISA. See id. at 1500-03 (finding jurisdiction under ERISA only when preemptive federal law governs the claim, and finding preemption only if the cause of action arises after the ERISA effective date and the conduct that forms the basis for the claim occurred after the ERISA effective date). The existence of subject matter jurisdiction is a question of law reviewed de novo. Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 990 (9th Cir.1994).
 
 I. Accrual of the ERISA Cause of Action
 
 10
 We agree with the district court that, pursuant to relevant Ninth Circuit precedent, Mills' cause of action arose in November 1990 when the Retirement Board formally denied his application for benefits under the Fox Plan and his internal remedies were exhausted. See, e.g., Martin v. Construction Laborer's Pension Trust, 947 F.2d 1381, 1386 (9th Cir.1991) (holding that "the exhaustion of [the claimant's] internal remedies and the denial of his claim ... constitute a clear repudiation of his claim, commencing the statute of limitations"); Smith v. Retirement Fund Trust, 857 F.2d 587, 590 (9th Cir.1988) (noting the defendant's concession that "Smith's cause of action did not accrue until benefits were denied"); Menhorn, 738 F.2d at 1498 (stating that the claimant's "cause of action accrued ... when his claim for benefits was formally denied").
 
 II. Time of the Relevant Acts or Omissions
 
 11
 We find, however, that the relevant conduct for evaluation of the claim occurred prior to the effective date of ERISA and should be evaluated by application of contemporaneous state law standards rather than retroactive ERISA standards. Where "the post-effective date formal denial is the inevitable result of unequivocal pre-effective date interpretations of or exercises of discretion under the plan," the denial is not reviewable under ERISA. Menhorn, 738 F.2d at 1501; see also Quinn v. Country Club Soda Co., 639 F.2d 838, 841 (1st Cir.1981) (denying jurisdiction, in a case remarkably similar to the one at bar, because the formal denial of benefits after ERISA's effective date was based on a pre-effective-date communication of a decision that the claimant was ineligible to participate in the plan).
 
 
 12
 The gist of Mills' complaint is that the language of Hunt's 1965 letter did not have prospective application, and that the language of the Fox Plan in effect in 1965 and as reworded in 1974 must be read to include him. Thus, he essentially argues that the Plan's trustees abused their discretion in refusing his request to transfer to the Fox Plan based on the executive decision and the Fox Plan exclusion.
 
 
 13
 The facts, however, demonstrate that no party has ever considered Mills a member of the Fox Plan and that the Fox Plan has been interpreted consistently to exclude Mills. Mills acknowledges that he and others were told at the beginning of their employment as managers that they were not participants because of the executive decision, and that he had been informed on numerous occasions prior to the ERISA effective date of the decision that he would not be allowed to transfer to the Fox Plan. Mills also concedes that Deluxe executives decided to exclude Deluxe managers who were already participants in the MPIPP from the Fox Plan because they considered the MPIPP to be a better plan.
 
 
 14
 On the basis of these facts, the denial of Mills' claim for benefits in 1990 was a mere formality in conformity with the position consistently communicated to Mills at the time of his inquiries after promotion to a management position and his first colorable claim to eligibility in the Fox Plan. Any other decision would result in retroactive application of ERISA standards to past conduct simply because that conduct generates post-ERISA consequences. Because these pre-effective-date decisions rendered the 1990 denial inevitable, there is no jurisdiction pursuant to ERISA. See Menhorn, 738 F.2d at 1501.
 
 
 15
 Mills' reliance on our opinion in Smith v. Retirement Fund Trust, 857 F.2d 587 (9th Cir.1988), is unfounded. There, the trust had not made a "contemporaneous decision to refuse contributions on Smith's behalf during the years in question." Id. at 590. We found that the regular pension statements, which reflected the lack of credit, did not represent an affirmative decision to deny credits. Id. No decision had been made until the formal application, when the trustees decided to deny credit for those years because of their interpretation of current law governing participation in a Taft-Hartley trust. Id. Thus, unlike Mills, who received a definitive decision in response to his special request for transfer to the Fox Plan prior to the ERISA effective date, the claimant in Smith did not know whether he would receive credit for the pre-ERISA period of work until the trustees considered his formal application.
 
 
 16
 Our conclusion is buttressed by the district court's ruling that laches provides a defense to Mills' claim, because the relevant acts or omissions considered for the laches defense occurred prior to the ERISA effective date. The district court found that Mills "sat on his rights" to participate in the Fox Plan after he knew that the Fox Plan had been interpreted to exclude him because of his participation in the MPIPP. The conduct that forms the basis of Mills' claim occurred during the late sixties and early seventies, and many of the relevant actors and records are no longer available. Thus, the district court concluded that "Mills knowingly waited almost twenty-five years" to assert his rights.
 
 
 17
 Therefore, we hold that the district court lacked subject matter jurisdiction over this suit because Mills' complaint regards a policy and course of conduct that was instituted, applied, and communicated to Mills prior to the effective date of ERISA. Because the district court lacked jurisdiction, we vacate its judgment and remand with directions to dismiss the complaint for lack of subject matter jurisdiction.
 
 
 18
 VACATED AND REMANDED FOR DISMISSAL.
 
 
 
 *
 The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3